*Michigan Supreme Court*
*Lansing, Michigan 48909*

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

FILED JULY 11, 2002

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff,

v                                           Nos. 117750, 118078

KALVIN RANDOLPH,

    Defendant.

_____

BEFORE THE ENTIRE BENCH

KELLY, J.

On appeal from defendant's conviction for unarmed robbery, the Court of Appeals reversed the judgment for insufficient evidence and remanded for entry of a conviction of larceny in a building. 242 Mich App 417; 619 NW2d 168 (2000). It provided that the prosecutor could retry defendant on the original unarmed robbery charge if it had additional evidence. Both the prosecution and defendant appeal from that decision.

We conclude that defendant could not be convicted of unarmed robbery under the facts of this case. We also reassert that a defendant cannot be retried on a charge not previously supported by sufficient evidence where additional evidence is discovered to support it. Therefore, we affirm the Court of Appeals decision in part, reverse it in part, and remand for entry of a judgment of conviction of larceny in a building and for resentencing.

## I. Factual and Procedural History

Defendant took merchandise valued at approximately $120 from a Meijer store. After purchasing other items, he left the store with a rotary tool, a battery, a battery charger, and a thermostat without paying for them. The store's loss-prevention staff observed the theft and acted to apprehend defendant when he emerged from the store.

There are several versions of what happened next. Taking the evidence in the light most favorable to the prosecution, when the plain-clothed security guards identified themselves, defendant lunged forward to run. At least one guard seized him, putting him in an "escort hold." Defendant broke free and swung his arm at the guards, physically assaulting at least one of them.[1] In his efforts to escape, defendant lost

---

[1]Defendant claimed he used no force at all.

2

possession of the merchandise. The prosecutor charged him with unarmed robbery, and a jury convicted him as charged. MCL 750.530.

When it reviewed defendant's unarmed robbery conviction, the Court of Appeals applied the "transactional approach," which it adopted explicitly in *People v LeFlore*, 96 Mich App 557, 561-562; 293 NW2d 628 (1980).[2] Under this approach, a defendant has not completed a robbery until he has escaped with stolen merchandise. Thus, a completed larceny may be elevated to a robbery if the defendant uses force after the taking and before reaching temporary safety. See *People v Newcomb*, 190 Mich App 424, 430-431; 476 NW2d 749 (1991); *People v Turner*, 120 Mich App 23, 28; 328 NW2d 5 (1982); *People v Tinsley*, 176 Mich App 119, 120; 439 NW2d 313 (1989).

Applying that test, the Court of Appeals reasoned "there was insufficient evidence to support defendant's conviction of unarmed robbery because defendant was unsuccessful in escaping and thus he never completed the larcenous transaction." 242 Mich App 421. Therefore, it reversed the unarmed robbery conviction and remanded for entry of a conviction of larceny in a building, "unless the prosecutor opts to retry defendant

---

[2]Although the Court of Appeals did not identify its holding in *People v Sanders*, 28 Mich App 274; 184 NW2d 269 (1970), as employing the "transactional approach," the concept originated there.

3

on the original charge based on additional evidence." *Id.* at 423. We granted both parties' applications for leave to appeal. 465 Mich 885 (2001).

## II. Unarmed Robbery

Michigan's unarmed robbery statute, MCL 750.530, provides:

> Any person who shall, *by force or violence, or by assault or putting in fear, feloniously rob, steal and take from the person of another, or in his presence*, any money or other property which may be the subject of larceny, such robber not being armed with a dangerous weapon, shall be guilty of a felony, punishable by imprisonment in the state prison not more than 15 years. [Emphasis added.]

Robbery is a crime against a person. *People v Hendricks*, 446 Mich 435, 451; 521 NW2d 546 (1994). As the Court of Appeals acknowledged in *LeFlore*,[3] "Both the armed and unarmed robbery statutes are clear that the forceful act must be used to accomplish the taking."

We base our holding on the language of the unarmed robbery statute and the common-law history of unarmed robbery. From that we conclude that the force used to accomplish the taking underlying a charge of unarmed robbery must be contemporaneous with the taking. The force used later to retain stolen property is not included. Those Court of Appeals cases that have held otherwise, applying a

---

[3]*Supra* at 562.

4

"transactional approach" to unarmed robbery, are herein overruled.

### A. Robbery at Common Law

Michigan's unarmed robbery statute is derived from the common law. The first robbery statutes, enacted in 1838, adopted the common-law definition of robbery, but divided the offense by levels of severity, depending on whether a perpetrator was armed. *People v Calvin*, 60 Mich 113, 120; 26 NW 851 (1886).[4] The 1838 codification of unarmed robbery is nearly identical to our current statute.[5]

---

[4]If there were any doubt that the unarmed robbery statute codified the common law, this Court dispelled it in *Stout v Keyes,* 2 Doug 184, 188 (Mich, 1845). In *Stout*, this Court rejected a claim that the common law had been supplanted by our constitution and the revised statutes. It explained that our constitution did not abrogate, but rather retained, the common law. Our revised statutes repealed only earlier laws that were repugnant to the provisions of the revised statutes. The *Stout* Court concluded: "In almost every part of the Revised Statutes of 1838 relating to rights and remedies, the common law is incidentally or otherwise recognized." *Id.*

[5]1838 RS, tit 1, ch 3, § 12 provided, with regard to unarmed robbery:

> If any person shall, *by force and violence, or by assault or putting in fear, feloniously rob, steal and take from the person of another* any money or property, which may be the subject of larceny, (such robber not being armed with a dangerous weapon,) he shall be punished by imprisonment in the state prison not more than life, or for any term of years. [Emphasis added.]

Other than stylistic changes, the only substantive
(continued...)

At common law the elements of the offense of robbery were "the felonious and forcible taking, from the person of another, of goods or money to any value by violence or putting him in fear."  4 Blackstone, Commentaries, p 241; see also, *People v Covelesky,* 217 Mich 90, 96; 185 NW 770 (1921).  The force or violence had to be applied before or during the taking.  See *id.* at 242. ("[T]he taking must be by force, or a *previous* putting in fear. . . .")[6]  (Emphasis added.)

_____

[5](...continued)
modification since the first statute is the addition of the phrase "or in his presence."  This modification is itself consistent with the common-law definition of robbery.  See 4 Blackstone, Commentaries, p 242 ("But if the taking be not either directly from his person, or in his presence, it is no robbery").

[6]See, also, the encyclopedic work by Joel Prentiss Bishop, a leading nineteenth century legal commentator, who stated the common law as follows:  "The violence must precede or be contemporaneous with the taking.  When no force is used to obtain the property[,] force used to retain it will not make the crime robbery."  2 Zane & Zollman, Bishop, Criminal Law (9th ed), § 1168.2, p 865.

Other commentators concur with Blackstone's view of the common law.  See, e.g., 2 LaFave & Scott, Substantive Criminal Law, § 8.11, p 452 ("Thus, under the traditional view it is not robbery to steal property without violence or intimidation (e.g., to obtain it by stealth or fraud or sudden snatching), although the thief later, in order to retain the stolen property or make good his escape, uses violence or intimidation upon the property owner. The defendant's acts of violence or intimidation must occur either *before* the taking (though continuing to have an operative effect until the time of the taking) or *at* the time of the taking."); 4 Torcia, Wharton, Criminal Law (15th ed), § 463, pp 33-36 ("At common law, and in some states, force or threatened force (putting a
(continued...)

6

victim in fear of injury) amounts to robbery only if it is used to 'take' property from the possession of another. Force or threatened force used thereafter, in order to retain possession of the property taken or to facilitate escape, does not qualify. At best, in such cases, the separate offenses of larceny and assault or larceny and battery are committed.").

The dissent offers the views of several other common-law commentators. However, read carefully, these commentators support the definition of robbery under the common law that we have related above. For example, Odgers states that common-law robbery consisted of "the unlawful taking possession of the goods of another by means of violence or threats of violence" and that the violence must occur "at the time of or *immediately before or immediately after* such robbery . . . ." 1 Odgers, The Common Law of England (2d ed), ch 8, p 331. This definition acknowledges that the taking must be *by* violence or the threat of violence. In this case, the taking occurred without violence.

Contrary to the dissent's assertion, the use of the phrase "immediately before or immediately after" is consistent with our view that the use of force must be contemporaneous with the taking. Possibly, the dissent missapprehends the immediacy of the term "immediately." Odgers illustrated the point with the following: "[W]here the prisoner seized the prosecutor's watch and, on finding that it was secured by a chain around his neck, violently pulled and jerked until it broke, and then ran away with the watch, this was held to amount to robbery." *Id*. at 332, quoting *Rex v Harman* (Harman's Case), 1 Hale, PC 534. Thus, force applied immediately after the taking is sufficiently contemporaneous. In this case, defendant did not use force until after he had completed the taking and left the store. Therefore, the use of force did not occur immediately after the taking.

Similarly, the dissent's reliance on Rapalje's explanation of the common law of robbery is unavailing. The dissent fails to quote Rapalje's statement of the common-law definition of robbery:

> Feloniously taking the property of another in his presence and against his will, by putting him

(continued...)

7

Accordingly, the common law concerning robbery that was received by the drafters and ratifiers of our constitution required (1) a taking from the person, (2) accomplished by an earlier or contemporaneous application of force or violence, or the threat of it.  If force was used later to retain the property, the crime committed did not constitute robbery.

Thus, consistently with the rule under common law, MCL 750.530 must be read to require a taking accomplished by "force or violence, or by assault or putting in fear."  The statute excludes a nonforceful taking, even if force were later used to retain the stolen property.  By the same reasoning, force used to escape with stolen property is insufficient to sustain a robbery charge under our statute.  Nonetheless, over the past thirty years, the Court of Appeals

───────────────

[6](...continued)
in fear of immediate personal injury, is robbery at common law.  The taking must be either directly from the person or in the presence of the party robbed, and must be by force, or a previous putting in fear.  It is the previous violence or intimidation that distinguishes robbery from larceny. [Rapalje, Larceny & Kindred Offenses (1892), § 445, p 633.]

The remainder of Rapalje's statement on robbery is no more availing to the dissent's position.  Carefully read, the entire passage supports the majority's view rather than the dissent's view of the common law.  See *id.* at § 446, pp 633-637.  The dissent is simply incorrect in asserting that the common-law understanding of robbery supports the "transactional approach" to unarmed robbery.

has created a doctrine that strayed from the language of MCL 750.530 and its historical common-law context.

B.  The Court of Appeals and the "Transactional Approach"

This Court has never recognized the "transactional approach."  In 1971, the Court of Appeals began to expand the codified common-law requirements of robbery.  In *People v Sanders*,[7] it concluded that the defendant, having completed his theft "by stealth," was guilty of armed robbery because he fired a gunshot into the air to frighten off pursuers.  Although it recognized the general rule that "an assault must be concomitant with the taking in order to support a charge of armed robbery," the panel relied on the law of other jurisdictions.  *Id*. at 276.  It held that there was "no valid basis for isolating the incidents of the entire event when the taking is not effectively completed until after the assault. . . . [A]nd the incident of the taking must be viewed in its totality in order to ascertain the intent of the defendant when the assault occurs."  *Id*. at 277.  Thus, with the decision in *Sanders*, the Court of Appeals began its shift toward the "transactional approach."

In *LeFlore*, the concept was identified by name and applied in the context of unarmed robbery.  *Supra* at 561-563.

---

[7]28 Mich App 274; 184 NW2d 269 (1970).

In that case, the defendant took money from the victim after physically assaulting her. On appeal, he claimed that there was insufficient evidence to support the unarmed robbery conviction because the taking had been a mere afterthought. He claimed to have had no larcenous intent at the time of the assault. The *LeFlore* panel held that the "larceny transaction should be viewed as a whole to determine the defendant's intent." *LeFlore, supra* at 562.

In *Turner*, the "transactional approach" was extended further to express that a robbery is incomplete until the defendant escapes with the stolen property:

> We agree that a completed escape is unnecessary to constitute asportation. "Any movement of goods, even if by the victim under the direction of defendant . . . constitutes asportation . . . ." However, *robbery is also a continuous offense: it is not complete until the perpetrators reach temporary safety*. As such, while the essential elements were completed, the offense continued during the escape. [120 Mich App 28 (citations omitted; emphasis added).]

The *Turner* holding was repeated in *Tinsley*. The fiction found there, that a robbery is not complete until a defendant reaches temporary safety, gave rise to the Court of Appeals holding in the instant case: that the defendant must complete his escape with the stolen merchandise or he cannot be convicted of unarmed robbery.

This "transactional approach" can not be harmonized

10

either with the language of MCL 750.530 or with the common-law history of our unarmed robbery statute.[8]  As Judge William Blackstone stated:

> This previous violence or putting in fear is the criterion that distinguishes robberies from other larcinies.  For, if one privately steals sixpence from the person of another, and afterwards keeps it by putting in fear, this is no robbery, for the fear is subsequent . . . .  [Blackstone, *supra* at 242.][9]

---

[8]The dissent appears to agree that our unarmed robbery statute directly adopts and implements the common-law definition of robbery.  Slip op at 11, n 6.  However, it diverges from us when claiming that robbery is a continuing offense that is not complete until the thief reaches a place of temporary safety.  This definition finds no support in the common law.  None of the commentators cited by either the majority or the dissent identifies the "place of temporary safety" as an aspect of robbery.  It finds no support, either, in the plain language of the statute which fails to mention, or even allude to, a "place of temporary safety."  In light of the history and text of the statute, the dissent is inaccurate in attempting to justify its preferential interpretation as true to the common law.

[9]The dissent contends that we make "much of [this] quotation."  Slip op at 28.  It asserts that Perkins states that "this quotation has been misapplied."  *Id.*  However, the dissent misunderstands the point that Perkins was making.  Perkins indicated that certain courts, in certain factual situations, had *occasionally* misapplied Blackstone's view of the common law.  In one case, a thief obtained a gun on the pretext of wishing to inspect it, turned it on the owner and threatened to use it before fleeing with it. Perkins criticized the court that reversed the thief's conviction for robbery.  He noted that the thief initially had mere *custody* of the weapon, but his possession of it was secured by the threat of force.  Perkins, *supra* at 348-349.

The dissent claims that, in the case on appeal, defendant had only custody of the items when the security guard

(continued...)

11

Thus did Blackstone identify the real difficulty with the "transactional approach": it inappropriately characterizes a completed larceny as a robbery.

It is useful to recall that at common law simple larceny was defined as "the felonious taking, and carrying away, of the personal goods of another." Blackstone, *supra*, p 229; see also, *People v Johnson,* 81 Mich 573, 576; 45 NW 1119 (1890). Larceny was contrasted with robbery in that common-law larceny was a robbery minus the use of force to accomplish the taking

---

[9](...continued)
attempted to stop him. This view is unsupportable. In Perkin's example, the owner willingly parted with physical control of the gun in response to the robber's nonthreatening request. It was only after the robber obtained temporary consensual custody of the weapon that he threatened the owner and exercised possession that was inconsistent with the owner's rights. In this case, defendant took the items and concealed them under his coat. Thus, wrongful possession and custody that were inconsistent with the owner's rights were asserted at the time of the taking. Defendant never had rightful possession and custody of these items with the owner's consent.

Furthermore, the quotation relied on by the dissent again supports, rather than contradicts, the interpretation of Blackstone that we have related above: "[I]f subsequent to the larceny the owner should come upon the thief and be prevented from retaking his property by force or violence, the thief would be guilty of larceny and assault, but not robbery." *Id.* at 349. The use of "res gestae" in the Perkins quotation, considered in context and in light of the comments of commentators (Blackstone, Bishop, LaFave and Scott, Wharton, Odgers, and Rapalje), does not suggest an expansive "transactional" view of robbery. Rather it narrowly refers to the events occurring contemporaneously with the taking, precisely the time frame in which the application of force must occur.

and absent the requirement that the taking be "from the person."  Blackstone stated this cogently when he summarized: "This previous violence or putting in fear, is the criterion that distinguishes robberies from other larcinies."  *Id.* at 242.[10]

We emphasize that a larceny is complete when the taking occurs.  The offense does not continue.  This fact is

_____

[10]Other distinguished commentators have opined similarly. Professor Charles Torcia, current author of Wharton, Criminal Law, the well-known and often cited contemporary exposition on the criminal law, explains that at common law the use of force "amounts to robbery only if it is used to 'take' the property from the possession of another."  Wharton, § 463, p 33.  He then continues:

> Force or threatened force used thereafter, in order to retain possession of the property taken or to facilitate escape, does not qualify.  At best, in such a case, the separate offenses of larceny and assault or larceny and battery are committed.  [*Id.* at 33-36.]

Similarly, Bishop in his previously cited work on criminal law states:  "The fear of physical ill must come before the relinquishment of the thing to the thief, not after; else the taking is not robbery."  Bishop, § 1175, p 869.

Even the Court of Appeals recognized this rule while declining to follow it in favor of its "transactional approach":  "Both the armed and unarmed robbery statutes are clear that the forceful act must be *used to accomplish* the taking. . . .  Unless there is a purposeful relationship between these two elements, the criminal episode is merely two isolated crimes of larceny and perhaps assault and battery." *LeFlore*, *supra* at 562, quoting LaFave, *supra*.

13

illustrated in *People v Bradovich,*[11] in which two defendants in a store concealed two suits under their own clothing and attempted to leave. Realizing that store personnel were following them and that they would be apprehended, they abandoned the stolen clothing and departed. When later charged with larceny, they claimed to have abandoned the property before leaving the store, and therefore, not to have completed the offense. This Court disagreed, holding that the larceny was complete when the thieves concealed the store's clothing under their own. *Id.* at 332.

The dissent acknowledges that larceny and robbery are distinct crimes. That the two crimes are distinct offenses indicates nothing more than that they have different elements: robbery is a larceny aggravated by the fact that the taking is from the person, or in his presence, accomplished with force or the threat of force. *People v Wakeford,* 418 Mich 95, 127-128; 341 NW2d 68 (1983) (opinion of Levin, J.).

However, the dissent asserts without supporting authority that "for the purpose of the crime of robbery, the relevant act encompasses a broader spectrum of time, and includes not simply an initial larcenous taking, 'by force and violence' or 'by assault,' but a robbing of the victim 'by assault' when

---

[11]305 Mich 329; 9 NW2d 560 (1943).

14

the property remains in the victim's presence."  Slip op at 13.  Neither the common law nor contemporary authority supports the view that the taking that establishes the larceny element of robbery continues until the robber reaches a place of temporary safety.

We reject the dissent's reliance on cases from other jurisdictions because they are either distinguishable on their facts or inconsistent with the common-law view of robbery adopted by Michigan.  We also find particularly instructive *State v Manchester,* 57 Wash App 765; 790 P2d 217 (1990).  There, the Washington Court of Appeals, noting the split in jurisdictions on the question of the timing of the use of force, cited *Sanders, supra,* and *People v Beebe,* 70 Mich App 154; 245 NW2d 547 (1976).  *Manchester* placed Michigan with the majority of jurisdictions that do not consider a robbery complete until the robber has reached a place of temporary safety.  The Court observed:  "Because this approach does not follow the common law, courts focus on the language of the robbery statute to reach this result."  *Id.* at 770.

We agree that the "transactional approach" used by our Court of Appeals is contrary to the common law.  As we have explained above, the language of our statute does not permit us to adopt the view espoused by the Court of Appeals and the dissent.

15

We are also persuaded by *Tennessee v Owens*,[12] where the Tennessee Supreme Court was faced with the question, "[H]ow closely connected in time must the taking and the violence be?" By way of response, the court compared the language of Tennessee's robbery statute with the language of other states' robbery statutes. The court noted that many jurisdictions have rejected the common-law rule in favor of the "continuous offense theory." *Id.* at 638-639, 639, n 7.

However, most of those states have statutes that specifically define robbery to include the use of force to retain property or to escape. *Id.* at 639. Many of the statutes provide that a person commits robbery if he uses force "in the course of committing" a theft or larceny. See Ala Code 1975, § 13A-8-43; Ariz Rev Stat, §§ 13-1901-1904; Conn Gen Stat, § 53a-133; Del Code Ann, tit 11, § 831; Fla Stat, § 812.13; Haw Rev Stat, § 708-841; Minn Stat, § 609.24; Mont Code Ann, § 45-5-401; NJ Stat Ann, § 2C:15-1; NY Penal Laws, § 160.00; ND Cent Code, § 12.1-22-01; Or Rev Stat, § 164.395; Tex Penal Code Ann, § 29.02; Utah Code Ann, § 76-6-301.

All the statutes define "in the course of" to include either "escape," "flight," "retention," or "subsequent to the

---

[12]20 SW3d 634 (Tenn, 2000).

taking."  In other jurisdictions that follow this approach, the statutes specifically include the expressions "resisting apprehension,"[13] "facilitate escape,"[14] "fleeing immediately after,"[15] or used to "retain possession."[16]

By contrast, other jurisdictions have statutes that follow the common-law rule requiring that the force, violence, or putting in fear occur before or contemporaneous with the larcenous taking.  These states have statutes substantially similar to Michigan's.  See Ga Code Ann, § 16-8-40; Ind Code, § 35-42-5-1; Kan Stat Ann, § 21-3426; Miss Code Ann, § 97-3-73; NM Stat Ann, § 30-16-2; Tenn Code Ann, § 39-13-401; see also 93 ALR3d 647-649.

In summary, at common law, a robbery required that the force, violence, or putting in fear occur before or contemporaneous with the larcenous taking.  If the violence, force, or putting in fear occurred after the taking, the crime was not robbery, but rather larceny and perhaps assault. Hence, the "transactional approach" espoused by the Court of Appeals is without pedigree in our law and must be abandoned. *Sanders, LeFlore, Turner,* and *Tinsley* are overruled.

---

[13]Ark Code Ann, § 5-12-102.

[14]Nev Rev Stat, § 200.380.

[15]Ohio Rev Code Ann, § 2911.01.

[16]Wash Rev Code, § 9A.56.190.

17

III. Analysis of the Case on Appeal

Turning to the facts of this case, the prosecution seeks to extend the transaction that began with the in-store taking to include the struggle in the parking lot. We point out that defendant not only failed to escape, but, more importantly, did not accomplish his taking by the use of force, violence, assault, or putting in fear.[17]

While store security personnel observed him, defendant removed several items from the display shelves of the Meijer store and concealed them beneath his coat. He continued to retain possession of this property as he picked up two quarts of oil, went to a checkout lane, paid for the oil and walked from the store. The first use of force or violence was in the parking lot when a security guard attempted to restrain him. Hence, his use of force or violence was not to take the property, but to retain it and escape apprehension. It follows that defendant did not commit the offense of unarmed robbery.

The dissent makes much of the fact that the unarmed robbery statute applies to a taking from "the person of

---

[17]We agree with the dissent that escape is not an element of robbery, and this statement should not be construed to imply otherwise. We merely point out that the circumstances of this case go beyond what the Court of Appeals deemed significant, the irrelevant fact that defendant did not escape.

18

another, *or in his presence*," but overlooks the context of that language.  The dissent relies heavily on the notion of constructive possession and the intent to permanently deprive.  However, we are left without a satisfactory explanation of why the use of force that does not accomplish a taking would escalate the offense of larceny to unarmed robbery.

The dissent asserts that force used after a taking, while the victim has constructive possession of stolen property or while it is in the victim's presence, supports a charge of robbery.  Notably, however, in each of the dissent's examples, the force used was to accomplish the ultimate taking.  That did not occur in this case.  The dissent attempts to merge a subsequent force not used to accomplish a taking with the completed taking that preceded the force.[18]

We think it significant that the statute identifies unarmed robbery as the taking of another's property in the other's presence "*by* force and violence, or *by* assault or putting in fear."  MCL 750.530 (emphasis added).  If the physical taking were accomplished without force, assault, or fear, the statute does not permit treating the larcenous crime

_____

[18]Certainly, as the dissent asserts, it may be wise to wait to apprehend a thief who has not used force or violence until after he has left a populated store.  In so doing, however, one would be apprehending a thief who committed larceny, not a robber.

19

as a robbery because of a subsequent forceful act. Such force used to retain stolen property is simply outside the scope of MCL 750.530.[19] That defendant cannot be convicted of unarmed robbery is particularly clear here, because his force by no means accomplished a severing of the store's constructive possession of the merchandise.

We note that defendant's taking of the merchandise in this case is indistinguishable from the taking in *Bradovich*. Therefore, when defendant placed the merchandise under his clothing, he committed a taking without force, and his conduct constituted a completed larceny. The concealment evidences that, at the time he took the merchandise, defendant intended to permanently deprive the owner, Meijer, of it. Defendant's later acts, whether viewed as an unsuccessful attempt to retain the property or as an attempt to escape, are too removed from the completed taking to be considered

---

[19]The dissent's reliance on Sir Edward Coke's definition of common-law robbery is no more illuminating. It quotes Coke for the proposition that one who begins to steal by stealth but, then, "uses force in order to complete the taking" has committed robbery. Slip op at 36. Again, we agree that one who uses force to take the property of another has committed unarmed robbery. We simply will not extend that proposition to force used after the taking, when the force does not serve to accomplish the taking. The dissent is incorrect in extending Coke's definition to force used in an attempt to retain property where the taking has already been completed. Nowhere in the dissent is this significant leap supported with any legal or analytical foundation.

20

contemporaneous.[20]

The dissent's reliance on *People v Podolski*[21] is misplaced. In *Podolski*, this Court held the defendant responsible for felony murder when, after a robbery, one police officer shot and killed another while the robbers exchanged fire with the police. This Court did not base the felony murder on a "transactional" notion of robbery.

Rather, the unanimous Court asserted that "'when a felon's attempt to commit robbery or burglary sets in motion a chain of events which were or should have been within his contemplation when the motion was initiated, he should be held responsible for any death which by direct and almost

---

[20]The decisions of this Court and the Court of Appeals provide no support for the dissent's view, slip op at 24, that store security's continued observation of defendant extends the larcenous transaction. Nor do they support the view that the cessation of such observation can sever the owner's constructive possession of the stolen property. These views, asserted without authority, directly contradict the common-law assessment of larceny illustrated by *Bradovich* that a larceny is complete upon the taking and concealment of the property. As we have endeavored to show, they are also inconsistent with the common-law view of robbery because the taking is accomplished without force. Certainly, the owner's legal right to such property will always be superior to the thief's. However, the fact remains that physical custody and control of the property, actual possession, has been acquired by the thief when he conceals the property. The property has been "robbed, stolen and taken" from the owner and that felonious taking has been accomplished without force or the threat of force.

[21]332 Mich 508; 52 NW2d 201 (1952).

21

inevitable sequence results from the initial criminal act.'" *Id.* at 515-516, quoting *Commonwealth v Moyer*, 357 Pa 181, 190-191; 53 A2d 736 (1947). Where the issue is whether the force exerted during a robbery was used in taking the property of another, not whether it was a foreseeable consequence, *Podolski* is not on point. Therefore *Podolski* and its progeny are not persuasive by analogy as the dissent contends.

Finally, we disagree with the dissent's claim that we have created an impractical framework for unarmed robbery. The dissent greatly exaggerates the confusion generated by overruling the transactional approach. The rule is simple: a defendant commits an unarmed robbery when he takes the property of another by the use of force, violence, or putting in fear. After the initial larcenous act has been completed, the use of force against the victim to retain the property taken does not transform it into armed robbery.[22] The force,

_____

[22]The dissent claims that the Legislature could not have intended that the theft of under $200 of property, followed by the thief's violent assault on the victim, be "merely [a] third-degree retail fraud and assault, rather than the greater crime of robbery." Slip op at 40-41. The dissent further expresses surprise that a potential fifteen-year sentence could be reduced to "punishment of no more than 93 days in jail." *Id.* at 41.

As we have indicated, and as the commentators uniformly agree, at common law, a theft accomplished without force was a larceny; where the larceny was followed by the application of force, it was a larceny and an assault. It should be
(continued...)

22

violence or putting in fear must be used before or contemporaneous with the taking.

We overrule the "transactional approach" to unarmed robbery and reassert that the force, violence, assault or putting in fear underlying the robbery must occur before or contemporaneously with the felonious taking. Because this defendant did not use force, violence, assault, or putting in fear to accomplish his taking of property, he did not commit unarmed robbery.[23] Accordingly, we agree with the Court of

_____

[22](...continued)
concluded that our Legislature was well aware of the common-law view and intended to incorporate it into the statute when it codified the common law.

Finally, the sentencing prospect contemplated by the dissent, that the potential sentence would drop from fifteen years to one year, is incorrect. We are remanding this case for entry of a conviction of larceny in a building. The maximum sentence for that offense is four years, not one year. MCL 750.360 and MCL 750.503. Depending on the facts of the crime, a defendant who commits an assault following a larceny could be charged with a ninety-day misdemeanor, MCL 750.81, a one-year misdemeanor, MCL 750.81a, a four-year felony, MCL 750.82, a ten-year felony, MCL 750.84, MCL 750.86, or MCL 750.87, or life or, if the defendant intended to murder his victim, a term up to life in prison, MCL 750.83.

[23]As the dissent agrees, defendant accomplished a chargeable crime of larceny when he concealed the merchandise with the intent to steal it. When the security guards initiated contact with him and a physical struggle ensued, defendant lost possession of the merchandise. It defies logic to say that, when a defendant commits larceny, but loses possession of the property during a struggle, defendant's crime can be elevated to unarmed robbery.

(continued...)

23

Appeals panel, albeit using a different analysis, that the charge of unarmed robbery was not supported by the evidence. Therefore, we affirm its decision insofar as it reverses defendant's conviction.

## IV.  The Remedy

We find that the Court of Appeals erred when it provided that, with new evidence, the prosecution could retry defendant on the originally charged offense.  See *Burks v United States*, 437 US 1, 18; 98 S Ct 2141; 57 L Ed 2d 1 (1978); *People v Bullock*, 440 Mich 15, 26, n 7; 485 NW2d 866 (1992); *People v Murphy*, 416 Mich 453, 467; 331 NW2d 152 (1982).   The prosecution concedes that this was error.[24]  Defendant agrees

---

[23](...continued)
We recognize that one who commits retail fraud, essentially a larceny of merchandise for sale in a store open to the public, cannot be *charged* with larceny in a building. See MCL 750.356c(3).  However, *People v Ramsey*, 218 Mich App 191, 194-195; 553 NW2d 360 (1996), holds that one charged with unarmed robbery can be *convicted* of larceny in a building, even where the underlying facts would support a finding of retail fraud.  In this case defendant was charged with unarmed robbery.  The jury was instructed on that and on larceny in a building, not retail fraud.  Defendant concedes that he is guilty of larceny in a building.  For those reasons, we remand for entry of a judgment of conviction of larceny in a building, rather than for a conviction of retail fraud.  See part IV.

[24]Another panel of the Court of Appeals has already disavowed this portion of the Court of Appeals opinion, citing the United States Supreme Court in *Burks v United States*, 437 US 1, 11; 98 S Ct 2141; 57 L Ed 2d 1 (1978):

(continued...)

24

that, if defendant's unarmed robbery conviction is overturned, the proper remedy is a remand for entry of a conviction for larceny in a building.  MCL 750.360.[25]

The prosecution proposes, as an alternate position, that this case be remanded to the trial court for retrial on the lesser offense of assault with intent to commit unarmed robbery.  On the basis of our construction of the unarmed robbery statute, we reject that approach.  To support a charge of assault with intent to commit unarmed robbery, the prosecutor would again merge the initial taking with the force used to retain possession of the merchandise.  The taking and the force are too attenuated to support those charges.  The

---

[24](...continued)
Indeed, "affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding" is the chief evil against which the Double Jeopardy Clause protects. [*People v Watson*, 245 Mich App 572, 597; 629 NW2d 411 (2001).]

[25]The elements of larceny in a building are: (1) the actual or constructive taking of goods or property of another, (2) without the consent and against the will of the owner, and (3) a carrying away or asportation of the goods, (4) with a felonious intent, (5) the taking having occurred within the confines of the building.  MCL 750.360; *People v Sykes*, 229 Mich App 254, 278; 582 NW2d 197 (1998).  Defendant admits that he committed larceny in a building.  Also, the jury's decision necessarily included a finding that defendant committed every element of the crime of larceny in a building.  Therefore, a remand for entry of a conviction of that offense is appropriate.  See *People v Bearss*, 463 Mich 623, 632-633; 625 NW2d 10 (2001).

larceny in a building conviction better fits the facts of this case.

Because the Court of Appeals decision to allow retrial is in error, we reverse that portion of the opinion, but remand the case to the trial court. That court is to enter a conviction on the lesser offense of larceny in a building, on which the jury was charged and that was necessarily subsumed in its verdict.

## V. Conclusion

In conclusion, the Court of Appeals correctly determined that there was insufficient evidence to support defendant's conviction for unarmed robbery. Because the defendant completed a taking without using force, violence, assault or putting in fear, he could not be convicted of unarmed robbery.

We remand to the trial court for entry of a conviction for larceny in a building and for resentencing. Defendant cannot be retried for unarmed robbery. The opinion of the Court of Appeals is affirmed in part and reversed in part.

CAVANAGH, TAYLOR, and YOUNG, JJ., concurred with KELLY, J.

S T A T E   O F   M I C H I G A N

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff,

v                                    Nos. 117750, 188078

KALVIN RANDOLPH,

    Defendant.

_____

MARKMAN, J. (*dissenting*).

    I respectfully dissent. In affirming the Court of Appeals, the majority concludes that this Court has never adopted the "transactional approach" to robbery. Slip op at 9. The majority then proceeds to overrule more than thirty years of precedent in the Court of Appeals applying this view. In doing so, the majority states that "the force used to accomplish the taking underlying a charge of unarmed robbery must be contemporaneous with the taking." Slip op at 4. The majority concludes that defendant in this case "did not accomplish his taking by use of force, violence, assault, or putting in fear." Slip op at 18. Therefore, the majority concludes that defendant cannot be convicted of unarmed robbery. I strongly disagree with this analysis.

In my judgment, a person is guilty of the crime of robbery if, before reaching a place of temporary safety, the person uses force either to effect his initial taking of the property, or to retain possession of the property or to escape with the property, as long as the property remains "in [the] presence" of the victim. MCL 750.530. The language of the robbery statute, Michigan case law, and the common-law understanding of robbery each support the view that a person can be convicted of robbery even if the required element of force occurs after the perpetrator's initial seizure of the property, but before he has reached a place of temporary safety. Therefore, I would reverse the judgment of the Court of Appeals.

## I. Summary of the argument

In the criminal law, a crime is not complete until the act element and the mental element of the particular crime have concurred. *People v Patskan*, 387 Mich 701, 714; 199 NW2d 458 (1972).[1] In the case of unarmed robbery, the act element is the "felonious[] rob[bing], steal[ing] and tak[ing]" of

---

[1] See also Parker, *The economics of mens rea*, 79 Va L R 741, 741 (1993), citing Hall, General Principles of Criminal Law (2d ed), pp 133-141. See also Blakey, *The RICO civil fraud action in context: Reflections on Bennett v Berg*, 58 Notre Dame L Rev (1982), 237, 290, n 151, stating that "generally, there must be a concurrence between a specified state of mind and prohibited conduct, the mens rea and the actus reus."

property from the person of another or of property that is "in his presence." MCL 750.530. Further, the act element must be accomplished "by force and violence, or by assault or putting in fear." *Id.*, see also *People v Johnson*, 206 Mich App 122, 125-126; 520 NW2d 672 (1994). I will refer to this in the shorthand as the force element. The mental element or intent element of unarmed robbery is the intent to permanently deprive the owner of his property. *People v King*, 210 Mich App 425, 428; 534 NW2d 534 (1995). Thus, the act element and the force element must concur with the perpetrator's intent to permanently deprive the owner of his property.

Because the statute, and the case law interpreting the statute, provide that the property may be "in the presence" of the victim, "actual possession" of the property by the victim at the time that the force is used is not required. MCL 750.530, see also *People v Newcomb*, 190 Mich App 424, 430-431; 476 NW2d 749 (1991). The property continues to be "in [the] presence" of the victim where the property remains under his personal protection and control. *Id.*, see also *People v Covelesky*, 217 Mich 90, 97; 185 NW 770 (1921). It follows that, as long as the victim exercises this protection and control over the property, the requisite force element of robbery may still be used against him, because the property is still "in his presence". MCL 750.530. Thus, where an assault

3

occurs at any time during which the property can be said to be in the victim's presence, a robbery within the meaning of the statute occurs. In this case, although defendant had initially seized items from the shelf of the Meijer's store, the security guards continued to exercise protective custody and control over that property, because they continued to monitor defendant and they still had the right to take the property back. Therefore, the property was "in [their] presence within the meaning of MCL 750.530 when defendant, by assault, attempted to unlawfully deprive the security guards of the property. This "transactional view" of robbery,[2] as it has been applied in Michigan, is consistent with both the common-law definition and the statute defining robbery, and supports defendant's conviction.

## II. STATUTE

The majority, in my judgment, errs in its analysis of the crime of robbery by interpreting too narrowly the statute's requirements of the force element, the act element, and the concept of possession. As a consequence, the majority's conclusion that defendant "did not use force, violence, assault or putting in fear to accomplish his taking of

---

[2] The "transaction" designates the events occurring between the time of the initial seizure of the property and the eventual removal of such property from the victim's presence.

4

property" is also in error.  Slip op at 23.

The statute requires only that the force and violence *or* the assault occur at some point during which the property is "in the presence" of the victim.[3]  The statute does not limit the force element to the initial seizure of the property.  A robbery may occur "by force and violence" *or* "by assault" as long as the property remains "in [the] presence" of the victim.  The property is in the presence of the victim,

---

[3]  Michigan case law has long held that it is unnecessary that the victim be the actual owner of the property that is the subject of the larceny.  An employee or security guard of the owner of property who is assaulted during the course of a larceny is as susceptible to the crime of robbery as the owner. *Durand v People*, 47 Mich 332, 334; 11 NW 184 (1882).  See also *People v Cabassa*, 249 Mich 543,  546-547; 229 NW2d 442 (1930), sustaining a conviction of robbery where a gasoline station attendant, "[al]though not the actual owner of the property stolen, was in custody and control of it," and stating the rule to be that "[a]s against a wrong-doer an actual possession or custody of the goods [is] sufficient," and *People v Gould*, 384 Mich 71, 79-80; 179 NW2d 617 (1970).  Other jurisdictions have come to a similar conclusion.  To suggest that anyone other than the lawful owner of property cannot be the victim of a robbery, of course, would render even force used contemporaneous with a taking something other than robbery unless the force was used directly against the owner.  No force used against a security guard or other employee could ever amount to a robbery.

Indeed, consistent with this long-held view, the complaint, warrant, and information in this case showed the complainants or victims as Aaron Wilmoth (one of the two security guards) and Meijer's.  The charge of unarmed robbery against defendant charged that he: "[D]id feloniously rob, steal and take from the person of another, to-wit: Aaron Wilmoth and Nicole Lewis [the second security guard and the one who was injured by defendant] or in his/her presence, certain property . . . by force and violence or by assault or putting in fear . . . contrary to MCL 750.530."

although it is in the actual physical possession of the perpetrator, where the victim exercises protective custody and control over the property.[4]   This is in accord with the statute.

MCL 750.530 provides:

> Any person who shall, by force and violence, or by assault or putting in fear, feloniously rob, steal and take from the person of another, or in his presence, any money or other property which may be the subject of larceny, such robber not being armed with a dangerous weapon, shall be guilty of a felony . . . .

It is a settled rule of statutory construction that, unless otherwise defined in a statute, this Court will ascribe every statutory word or phrase its plain and ordinary meaning. See MCL 8.3a.  Further, this Court shall ensure that words in a statute are not ignored, treated as surplusage, or rendered nugatory.  *Hoste v Shanty Creek Mngt, Inc*, 459 Mich 561, 574; 592 NW2d 360 (1999).

Here, to describe the element of force, the Legislature used the words "by force and violence, or by assault or

---

[4]   The judge instructed the jury, without defense objection, that to prove the charge the prosecutor had to prove, in addition to the other articulated elements, "that this property was taken from the person of Aaron Wilmoth and Nicole Lewis or in their presence.  This can occur even if the property was not in the same immediate area as Aaron Wilmoth and Nicole Lewis."  The charge and the instructions demonstrate that the jury was informed of the elements in a manner consistently, not only with MCL 750.530, but also with the dissent's analysis of the crime of unarmed robbery.

putting in fear". MCL 750.530.  To describe the act that must be accomplished, the Legislature used the words "rob," "steal," and "take," and to describe the allowable possession of the property that is subject to the robbery, the Legislature used the words "in his presence."

The majority argues that a robbery occurs only when a person, by force and violence, or by assault or putting in fear, uses that force initially to seize the property from the person of another, or in his presence.  But, the statute plainly allows for more.  A robbery occurs under the statute where, by force and violence or by assault, the perpetrator takes property from the person or in his presence.  That is, where the robber initially seizes the property by force and violence or by assault.  However, the statute also allows for a conviction of robbery where, "by assault" the perpetrator "robs" property that is "in [the] presence" of the victim. The phrase "by assault" cannot mean the same thing as "by force and violence."  Rather, "assault" is defined simply as "a sudden violent attack."  *Random House Webster's College Dictionary* (1991).  The term is also defined more broadly as "illegal force."  Black's Law Dictionary (6th ed).

Further, the word "rob" cannot encompass merely the taking of the property, because the term "take" is already used in the statute.  The Legislature is not presumed to have

7

used different terms to mean the same thing. Here, the Legislature used the words "rob," "steal," and "take." "Rob" means to "[u]nlawfully deprive (a person) of or of something, esp. by force or the threat of force." *The New Shorter Oxford English Dictionary* (1993).

Thus, the statute, summarized, provides: "Any person who shall . . . by assault . . . rob . . . [property] from the person of another or in his presence . . . shall be guilty . . . ." That is, a person may be guilty of robbery if "by assault" he "robs" property that is "in [the] presence" of the victim. As the majority recognizes, the defendant in this case committed an assault upon the security guards. Because the security guards exercised protective custody and control over that property, it remained in their "presence". Viewing the evidence in a light most favorable to the prosecutor, the assault was committed so that the defendant could remove the property "from [the] presence" of the security guards. Defendant's violent act of assault evidenced his intent to unlawfully and permanently deprive the guards of the property.

The majority asserts that the dissent misapprehends the context of the statutory phrase "in his presence". The majority emphasizes the words "*by* force and violence, or *by* assault or putting in fear," slip op at 19, and assumes that these words apply *only* to the initial taking itself, and

therefore, concludes: "the statute identifies unarmed robbery as taking another's property in the other's presence '*by* force and violence, or *by* assault or putting in fear,'" and "[i]f the physical taking was accomplished without force, assault, or fear, the statute does not permit treating the larcenous crime as a robbery because of a subsequent forceful act." *Id*.

However, as I have indicated, I believe that, although property may be in the actual and wrongful possession of the perpetrator, it may still be "in [the] presence" of the victim such that the perpetrator may still, "by assault," "rob" the victim. MCL 750.530. While the statute provides that the act must be accomplished "by force and violence, or by assault," the requisite act is more than a mere taking or initial larceny of the property as evidenced by the statute's employment of the word "rob." As we have already indicated, "rob" means more broadly an unlawful deprivation of property by force.[5]

---

[5] The majority approaches the statute in a piecemeal fashion, restricting its application to the initial act of defendant's seizure of the property, and ignoring the significance of the terms "by assault", "rob" and "in his presence." Indeed, in *People v Calvin*, 60 Mich 113, 119; 26 NW 851 (1886), the offense of robbery was described by this Court as separating these two phrases. Describing the robbery statute, the Court stated, of unarmed robbery, that "the offense is perpetrated by force and violence . . . and robbing, stealing, and taking from the person of another, the robber not being armed with a dangerous weapon." *Id*., citing How Stat § 9091.

(continued...)

9

Therefore, although a larceny may be complete when the perpetrator initially wrongfully takes and conceals the property, the statute encompasses not merely a larceny, but a "rob[bing], steal[ing], and tak[ing]" by force and violence, or by assault or putting in fear, of property, that is "in [the] presence" of the victim. MCL 750.530. Thus, while through an initial larceny the perpetrator may steal property, he may not yet have "rob[bed]" that same property. Thus, an assault to "rob" may occur after the initial seizure of the property.

Further, the phrase "from the person of another, or in his presence" has been defined by this Court, in a manner consistent with this interpretation, to mean that the victim must merely maintain personal protection over the property for it to be considered "in his presence." In *Covelesky*, *supra* at 97, this Court stated:

> "[T]he words 'taking from the person of another,' as used in connection with the common-law definition of robbery, are not restricted in application to those cases in which the property taken is in actual contact with the person of the one from whom it is taken, but include within their meaning the taking by violence or intimidation from the person wronged, in his presence, of property which either belongs to him or which is under his

[5](...continued)

10

personal protection and control. And where such words have been incorporated into statutes defining robbery, they have received the same construction."[6]

In *Covelesky*, this Court further adopted the interpretation by the Iowa Supreme Court of the prepositional phrase "from the person of another" in the Iowa robbery statute, which "closely resembles" that of Michigan:

> "The preposition 'from' does not convey the idea of contact or propinquity of the person and property. It does not imply that the property is in the presence of the person. The thought of the statute, as expressed in the language, is that the property must be so in the possession or under the control of the individual robbed that violence or putting in fear was the means used by the robber to take it." [*Id.* at 99, quoting *State v Calhoun*, 72 Iowa 432; 34 NW 194, 196 (1887).]

As evidenced by this analysis, the majority takes too narrow a view of the concept of "possession" when it states that "this defendant did not did not use force, violence, assault or putting in fear to accomplish his taking of property." Slip op at 23. Neither the statute nor the common

_____

[6] As noted by the Court in *Covelesky*, the phrase "in his presence" was part of the definition of robbery at common law. Id. at 97, quoting 34 Cyc 1796. The actual words "or in his presence" were not added to the statute until 1931 with the adoption of the Michigan Penal Code, 1931 PA 328, § 529. *People v Moore*, 13 Mich App 320, 323, n 6; 164 NW2d 423 (1968). As the majority acknowledges, Michigan incorporated the common-law crime of robbery into the statute. Slip op at 5, n 4.

11

law requires that the victim be in actual possession of the property when the force is exercised. Although in the actual possession of the thief, the property may still be in the "presence" of the victim, because it is "under his personal protection and control," *Covelesky*, *supra* at 97-99, and the use of force at the time the perpetrator attempts to ultimately remove the property from the presence of the victim, sufficiently establishes the force necessary to commit robbery.[7] For a "thief does not obtain the complete, independent and absolute possession and control of money or property adverse to the rights of the owner where the taking is immediately resisted by the owner before the thief can remove it from the premises or from the owner's presence." *State v Long*, 234 Kan 580, 586; 675 P2d 832 (1984), see also *People v Clark*, 113 Mich App 477, 480; 317 NW2d 664 (1982); *Newcomb*, *supra* at 430-431.

The dissent does not disagree that the crimes of larceny

---

[7] "A thief who finds it necessary to use force or threatened force after a taking of property in order to retain possession may in legal contemplation be viewed as one who never had the requisite dominion and control of the property to qualify as a 'possessor.'" 4 Wharton, Criminal Law (14th ed), § 463, at 39-40.

and robbery are distinct.[8]  However, for the purpose of the crime of robbery, the relevant act encompasses a broader spectrum of time, and includes not simply an initial larcenous taking, "by force and violence" or "by assault," but a *robbing* of the victim "by assault" when the property remains in the victim's presence.

Thus, as long as the property is in the presence of the victim, that is, before the perpetrator reaches a place of "temporary safety," a robbery can occur when the perpetrator with actual possession attempts to sever the property from the victim's presence "by force and violence, or by assault or putting in fear."  MCL 750.530.[9]

---

[8]  The universal view at common law was that robbery was an aggravated form of larceny.  1 Odgers, The Common Law of England (2d ed), p 331.  See also Rapalje, Larceny & Kindred Offenses (1892), § 58, p 64, noting that the "distinction [between larceny and robbery] lies in the presence in one of them and the absence in the other of the elements of force and putting in fear."  That common-law robbery is a larceny aggravated by the use of force has continued to be the view in more modern times.  See LaFave & Scott, Criminal Law (1972), §94, p 692; Perkins, Criminal Law (2d ed), § 2, at 280.

[9]  The concept of "temporary safety" describes the point beyond which the property is no longer in the presence of the victim.  Practically, the perpetrator has escaped.  At this point, the perpetrator has consummated his wrongful possession by fully converting the property to his own use and may, unless apprehended, do with the property as he sees fit.  Upon reaching a place of temporary safety, the perpetrator finally exercises full "dominion and control" over the property.
(continued...)

13

### III.  Intent to "Permanently Deprive"

That the "transactional view" constitutes the proper view of robbery under the statute is reinforced, in my judgment, by the fact that the "intent to permanently deprive" element may occur after the initial taking.  Unarmed robbery is a specific intent crime.  *People v Dupie*, 395 Mich 483, 487; 236 NW2d 494 (1975), citing *People v McKeighan*, 205 Mich 367; 171 NW 500 (1919).  The focus of the intent element of robbery is on the perpetrator's intent to permanently deprive the owner of his property.  *King*, *supra* at 428.

While, ordinarily, the taking and the use of force in a robbery are relatively contemporaneous so that the requisite intent may be readily inferred from these events, the act of force nonetheless may precede or follow the taking.  *People v LeFlore*, 96 Mich App 557, 561-562; 293 NW2d 628 (1980).  For example, a typical  robbery occurs when, by the threat or use of force, the robber forces the victim to turn over property directly to him.  However, that the force occurs after the initial  taking  does  nothing  to  negate  the  "intent  to permanently  deprive"  element.    In  other  words,  when  the

----

[9](...continued)
Wharton, note 7, *supra*.  However, until that point, the victim is viewed as continuing to exercise protective custody and control over his property.  *Covelesky*, *supra* at 97-98.

14

perpetrator, by assault, intends still to permanently deprive the victim of property that remains in the victim's presence, a robbery can be said to have occurred. It is the perpetrator's intent at the time of the use of force-either to preserve his unlawful possession of the goods or to effect his escape (at least where these occur while the property remains "in the presence" of the victim)-that completes the crime of robbery.[10]

As long as there is a "purposeful relationship" between the elements of the crime of robbery: the act, whether that be robbing, stealing or taking, which establishes the intent to permanently deprive the victim of his property, and the force, which aggravates that crime into robbery, the robbery is complete. *LeFlore*, *supra* at 562, citing LaFave & Scott, Criminal Law, § 94, p 701-702. "The entire larcenous

---

[10] Further, the perpetrator's "willingness to use force against those who would restrain him in flight suggests that he would have employed force to effect the theft had the need arisen," in other words, that he has the specific intent to permanently deprive the owner of his property. 2 LaFave & Scott, Substantive Criminal Law, § 8.11, p 453. This view of robbery recognizes that robbery is a crime against the person, and its prosecution is intended to protect the person robbed. *People v Hendricks*, 446 Mich 435, 449-450; 521 NW2d 546 (1994). Where a perpetrator uses force against a person with the intent to permanently deprive that person of property over which he has protective custody and control, the perpetrator evidences the conduct that the statute seeks to punish.

15

transaction should be reviewed to determine if there is a continuity of intent between the forceful act and the taking (or vice versa)." *Id.*[11]

To clarify, consider the perpetrator who is observed shoplifting and manages to escape from the store before being apprehended. In such a case, the only crime that occurs is a larceny. The larceny is complete upon the perpetrator's concealment of the item, for it is at that time that the intent to deprive the owner of the property merged with the actual taking.

Next consider the perpetrator who is observed shoplifting and who is followed out into the parking lot. Before being confronted by the security guards, he drops the property onto the ground or he is apprehended. Again, the crime is larceny, for no further criminal intent may be inferred from his acts.

Finally, consider the perpetrator who uses force in the parking lot, as in this case, while he is still in actual possession of the property. The perpetrator is still viewed under the robbery statute as having robbed the victim because

---

[11] See *Briley v Commonwealth*, 221 Va 532, 543; 273 SE2d 48 (1980), stating that "[i]n a robbery prosecution, where the violence against the victim and the trespass to his property combine in a continuing, unbroken sequence of events, the robbery itself continues as well for the same period of time."

16

the property was still in the victim's presence when the assault occurred. The property was at the time of the thief's initial taking of it, and is still at the time of the assault, "in [the] presence" of the victim. MCL 750.530. The security guards continued to exercise "protective custody and control" over the property. *Covelesky*, *supra* at 97-98.

## IV. Transactional view

Having established that the statute encompasses not merely an initial taking of property "by force and violence" or "by assault", but rather, a robbing of the victim by assault, where property continues to be in the presence of the victim, the question next to be addressed is whether this Court should recognize the transactional view of robbery as it has hitherto been applied in Michigan.

### A. Court of Appeals Decisions

While this Court has never expressly adopted the "transactional view" of robbery, Michigan jurisprudence on this issue is no *tabula rasa*. The Court of Appeals, including the panel in this case, has expressly applied this view to robbery for at least thirty years.[12] See, e.g., *People v*

_____

[12] The deep rootedness of the "transaction approach" is further reflected by its regular articulation in recent opinions of the Court of Appeals which were not even viewed as

(continued...)

17

*Sanders*, 28 Mich App 274, 277; 184 NW2d 269 (1970) (stating that, in the context of armed robbery, "the incident of the taking must be viewed in its totality in order to ascertain the intent of the defendant when the assault occurs"); *People v Beebe*, 70 Mich App 154, 158; 245 NW2d 547 (1976) (stating that the view of the majority of other jurisdictions considers robbery as an "ongoing transaction" rather than one "broken up into its component acts"); *LeFlore*, *supra* at 562, stating that the "assault may follow the taking if that force is used to completely sever the victim's possession"); *Clark*, *supra* at

---

[12](...continued)
warranting publication. *People v Garrett*, unpublished opinion per curiam, issued March 26, 2002 (Docket No. 227944)(affirming the following instruction: "The use of force in retaining property taken or in attempting to escape rather than in the taking of property itself is sufficient to supply the element of force essential to the offense of robbery"); *People v Scruggs*, unpublished opinion per curiam, issued March 19, 2002 (Docket No. 225337)(affirming an armed robbery conviction where defendant brandished a knife during his escape from the scene of a larceny); *People v Cherry*, unpublished opinion per curiam, issued March 8, 2002 (Docket No. 224544) (affirming a conviction in an almost-identical case involving a parking lot fight with security guards); *People v Garza*, unpublished memorandum opinion, issued July 27, 2001 (Docket No. 223543)(observing that the "use of force in retaining the property taken or in attempting to escape is sufficient to supply the element of force or coercion essential to the offense of robbery"); *People v Wimbush*, unpublished opinion per curiam, issued April 28, 2000 (Docket No. 210709) (asserting that "Michigan has adopted a transactional approach for analyzing robbery").

480 (stating that Michigan employs the "'transaction' test for armed robbery, which provides that a taking is not considered complete until the assailant has effected his escape because the victim is still considered in possession of his property"); *People v Denny*, 114 Mich App 320, 324; 319 NW2d 574 (1982); *People v Turner*, 120 Mich App 23, 28; 328 NW2d 5 (1982); *People v Tinsley*, 176 Mich App 119, 121; 439 NW2d 313 (1989); *Newcomb*, *supra* at 430-431; *People v Velasquez*, 189 Mich App 14, 17; 472 NW2d 289 (1991).

Thus, the Court of Appeals has consistently interpreted the statutes defining robbery and armed robbery as "continuous offense[s], which [are] not complete until the perpetrator reaches a place of temporary safety." *Tinsley*, *supra* at 121. This line of precedent, with its attendant reasoning, provides considerable support for the proposition that the "transactional view" of robbery is consistent with Michigan jurisprudence.[13]

### B. ANALOGOUS PRINCIPLES IN SUPREME COURT

In addition to being consistent with the robbery statute,

---

[13] Cases in other jurisdictions with similar statutory language have also found sufficient evidence of robbery in strikingly similar factual circumstances to the instant case. See, e.g., *People v Estes*, 147 Cal App3d 23, 26; 194 Cal Rptr 909 (1983)[Cal Penal Code § 211]; *State v Long*, *supra* at 2 [Kan Stat Ann § 21-3426].

Michigan case law, and the common law, the "transactional view" of robbery has been implicitly accepted by this Court in other contexts. While the majority asserts, correctly, that this Court has never recognized the "transactional approach" in the specific context of robbery, slip op at 9, this Court has adopted a "transactional view" of robbery in the context of felony murder, where the murder occurs after commission of the robbery. *People v Podolski*, 332 Mich 508, 515-518; 52 NW2d 201 (1952). There, the Court stated that "the robber may be said to be engaged in the commission of the crime while he is endeavoring to escape and make away with the goods taken." *Id*. at 518. In *Podolski* at 515-518, this Court expressly adopted the reasoning of the Pennsylvania Supreme Court in *Commonwealth v Moyer*, 357 Pa 181, 190-191; 53 A2d 736 (1947), which stated:

> "It is equally consistent with reason and sound public policy to hold that when a felon's attempt to commit robbery or burglary sets in motion a chain of events which were or should have been within his contemplation when the motion was initiated, he should be held responsible for any death which by direct and almost inevitable sequence results from the initial criminal act . . . . Every robber or burglar knows that a likely later act in the chain of events he inaugurates will be the use of deadly force against him on the part of the selected victim. For whatever results follow from that natural and legal use of retaliating force, the felon must be held responsible."

20

Further, the *Podolski* Court at 517-518 agreed with the reasoning asserted by the prosecutor, quoting from Wharton, Homicide (3d ed), p 186:

> "Where a homicide is committed within the *res gestae* of a felony, however, it is committed in the perpetration of, or attempt to perpetrate, a felony within the meaning of such statutes. That the attempt to commit the felony was not far advanced does not lessen the offense. And a burglar who breaks into a building, or who shoots a person who discovers him in an effort to escape, cannot avoid punishment for murder in the first degree, upon the theory that the burglary consisted in breaking in, and was consummated before the killing. A burglar may be said to be engaged in the commission of the crime of burglary while making away with the plunder, and while engaged in securing it. So, a robbery within the meaning of a rule that a homicide committed in the perpetration of a robbery is murder in the first degree is not necessarily concluded by the removal of the goods from the presence of the owner; and it is not necessary that the homicide should be committed at the precise time and place of the robbery."[14]

---

[14] The majority criticizes the dissent's use of *Podolski*. The majority states that in that case "[t]his Court did not base the felony murder on a 'transactional' notion of robbery." Slip op at 21. The dissent does not assert that *Podolski* adopted a transactional approach to robbery. The case is cited only to illustrate that a felony murder conviction can be based on a killing that occurs after the predicate crime of robbery. Further, this case is cited to illustrate that the concept of an ongoing criminal transaction, in which the elements of the crime may be viewed as part of an unbroken chain of events, is an appropriate method for analyzing the conduct of individuals under the criminal law. The transactional approach to robbery merely recognizes the premise of *Podolski* that the use of force after a taking of property is sufficient to consummate the crime of

(continued...)

21

In my judgment, it is altogether reasonable to extend, by analogy, this reasoning with respect to felony murder for a killing committed after a burglary or after a robbery, to the case of an assault committed after an initial taking, but before the perpetrator's escape.

In *People v Gimotty*, 216 Mich App 254, 257-259; 549 NW2d 39 (1996), the Court of Appeals held that the defendant had not reached a place of temporary safety in his escape from the scene of retail fraud, defined in the chapter on larceny, MCL 750.356, and, thus, that the death of a child in a vehicle struck by the defendant's vehicle during a high-speed police chase from the store was sufficiently connected to the underlying offense to support felony murder. See also *People v Oliver*, 63 Mich App 509, 523; 234 NW2d 679 (1975); *People v Smith*, 55 Mich App 184, 189; 222 NW2d 172 (1974). Again, by analogy, these cases support the view that an assault following an ordinary larceny elevates the crime to robbery and that a perpetrator who uses that force at any time before reaching a place of temporary safety in an effort to retain the property or escape with the property can be charged with

---

[14](...continued)
robbery.

22

robbery.[15]

Finally, we would observe that the "transactional view" of robbery is also consistent with the premises that underlie the greater culpability of the perpetrator who resorts to violence in an attempt to steal property.[16] It is not the victim, but the perpetrator who should bear the full responsibility for his actions. "'Every robber or burglar knows that a likely later act in the chain of events he inaugurates will be the [attempted] use of deadly force against him on the part of the selected victim. For whatever results follow from that natural and legal use of retaliating force, the felon must be held responsible.'" *Podolski*, *supra*

---

[15] Surely, it is not because a larceny occurred that the property in this case can said to be out of the victim's presence. Indeed, because the security guards maintained uninterrupted surveillance over defendant and because they converged on him in a place where they were authorized to confront him and recover the property, the property was very much within their "protective custody and control." *Covelesky*, *supra* at 97-98. For the purposes of some larcenies, the property may be removed from the victim's presence, but the bare fact that a larceny occurs cannot, in every case, be deemed such removal.

[16] Blackstone observed that the "force . . . makes the violation of the person more atrocious than privately stealing." 4 Blackstone, Commentaries, Public Wrongs, ch 17, p 242. Blackstone refers also to the parallel view of robbery in the civil law: *"qui vi rapuit, fur improbior esse videtur,"* he who steals by violence must be judged with greater culpability as a robber. *Id*. See also Rapalje, *supra*, § 444, pp 632-633.

23

at 516 (citations omitted).  The use of force by the perpetrator against the owner of property who discovers his deed is an act, the need for which should not take the perpetrator by surprise.  The use of force in such a circumstance should not be viewed as unusual or uncommon, but rather as a typical incident of the crime of larceny.[17]

### V.  APPLICATION OF PRINCIPLE

When analyzing whether sufficient evidence has been presented to sustain a criminal conviction, this Court reviews the evidence in a light most favorable to the prosecutor and determines whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.  *People v Nowak*, 462 Mich 392, 399-400; 614 NW2d 78 (2000).  In that case, the Court articulated that this "standard of review is deferential:  a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict."  *Id.* at

---

[17]  "Robbery, while containing elements of theft of property, is primarily an assaultive crime . . .  "Robbery violates the social interest in the safety and security of the person as well as the social interest in the protection of property rights.  In fact, as a matter of abstract classification, it probably should be grouped with offenses against the person . . . .'"  [*Hendricks*, *supra* at 449.]

24

400.

The "transactional view" of robbery, as explained in this opinion, and in light of the facts and charges presented to the jury, supports defendant's conviction in the instant case. The record establishes that the Meijer security guards observed defendant commit a larceny when he concealed items that he had taken from a Meijer's department store and proceeded to leave the store without paying for them. The security guards continued to surveil defendant during this entire transaction, from the moment he took the property and concealed it until the altercation in the parking lot. During their observation of defendant, the security guards continued to exercise protective custody and control over the property. That is, the security guards had the authority and the right to take it back. Thus, the property was for all purposes "in [the] presence" of the guards. MCL 750.530. As security guards for the property's owner, Meijer's, these guards had a right and the authority to regain possession of the property. In the moments prior to the confrontation, defendant had a choice either to surrender peacefully or to attempt to remove the property from their presence by force, in this particular case, by assault. He chose the latter, and his conduct thereby evidenced an intent to forcefully and permanently

25

deprive Meijer's of its property.  By assault, defendant robbed the security guards of property that was in their presence.  It is at the moment when the defendant turned to force (which caused one of the guards to suffer a fractured bone in her face and two broken teeth) that his intent to deprive the owner of its property and the use of force merged to satisfy the elements of the crime of robbery.

## VI. COMMON LAW

### A.  FORCE AFTER INITIAL TAKING

Finally, an analysis of the common law supports the view that force used after an initial wrongful seizure of property, to prevent the victim's resistance or to escape with the property, is sufficient to satisfy the elements of the crime of robbery.  The common-law crime of robbery was defined as "the unlawful taking possession of the goods of another by means of violence or threats of violence, used with the object of obtaining those goods from the owner, without his consent and with the intention of depriving him permanently of all the benefits of his ownership."  1 Odgers,  The Common Law of England (2d ed), ch VIII, p 331.  In this work, which is a compilation of "all important statutes and decisions," the authors declare that where a person "used any personal violence at the time of or immediately before or immediately

26

after such robbery, he may be sentenced" as a robber was at that time, "to penal servitude for life." *Id*. The difference between larceny and robbery is further explained: "If the only violence used occurs accidentally and unintentionally in the prisoner's efforts to obtain possession of the property, the offence is larceny from the person and not robbery. But if violence is necessary to enable the prisoner to obtain possession of the property, and the prisoner on discovering this intentionally resorts to violence with that object, this is robbery." *Id*. at 332. In an example that follows, the author sets out the distinction between the successful escape and the violent altercation before the robber completes the escape:

> Thus, the snatching of a purse from a prosecutor, who is unaware of what is happening until after the purse is gone from his possession, cannot amount to robbery; but it will be otherwise if the prisoner does something to put the prosecutor in bodily fear before snatching the purse, for here the fear precedes the taking.

> So, if the prisoner obtains possession of the property without actual violence or threats of violence, the crime is only larceny from the person, unless the prisoner immediately after taking possession of the property uses personal violence." [*Id*.]

Finally, the common-law indictment for robbery was pled as follows:

27

A.B., on the ___day of __, in the county of    ,
robbed C.D. of a watch, and at the time of or
immediately before or immediately after such
robbery did use personal violence to the said C.D.
[2 Odgers, at 1478.]

Compare the view expressed by Rapalje in 1892, which also supports the view that the force element of robbery can occur after the initial seizure of the property: "To constitute robbery, the force used must be either before or at the time of the taking and of such a nature as to show that it was intended to overpower the party robbed, *or to prevent resistance on his part, and not merely to get possession of the property*." Rapalje, Larceny & Kindred Offenses (1892), § 446, p 637 (emphasis added). These views are more precise with regard to the actual nature of the crime of robbery as one of force against the victim to remove property from his presence. It is the use of force "not merely to get possession," but also, "to prevent resistance" that satisfies the elements of the crime. *Id*.[18] In my judgment, the majority

---

[18] The majority is incorrect in suggesting that this quotation does not reflect Rapalje's view of the common law. Slip op at 8, n 6. While Rapalje uses this quotation in discussing a North Carolina state court decision, he is merely repeating language from his own earlier statement cited by the majority, *id*., and then describing what he believes to be the consistent North Carolina view. Rapalje does not suggest in any way that the North Carolina view is inconsistent with his earlier statement. The phrase "not merely to get possession

(continued...)

28

errs in concluding that the common law of robbery would not support defendant's conviction in the instant case. The common law, which, as the majority acknowledges, has been incorporated into MCL 750.530, supported a conviction for robbery when a perpetrator used force against the victim even after the property had already been taken by the perpetrator, if the perpetrator used that force to prevent the victim's resistance or to escape with the property. This is what occurred in this case.[19]

## B. BLACKSTONE

In contending that the common law supports its view, the

---

[18](...continued) . . . [but also] to prevent resistance" fully supports his view that, even where a robber first possesses "the goods, up to the time of the felonious violence," the property is still in "the possession of the owner; and the taking, being in [the owner's] presence, is . . . from [the owner's] person." *Rapalje*, *supra*, § 445, at 633. When read in its entirety, Rapalje's quote is entirely consistent with the dissent's view that the property may already be in the possession of the perpetrator, that is, it may already have been initially "taken" when the forceful act necessary to complete the robbery occurs.

[19] By its approval of Odgers, slip op at 7, n 6, the majority appears to concede that the force used in a robbery may occur *after* the taking. Somehow, however, in the very same breath, the majority asserts that Odgers offers support for *its* view that the force and the taking must be contemporaneous. If the force may occur immediately *after* the initial taking, it is hard to understand the basis for the majority's proposition that there must be absolute contemporaneousness.

29

majority makes much of the quotation from Blackstone that "if one privately steals sixpence from the person of another, and afterwards keeps it by putting him in fear, this is no robbery, for the fear is subsequent . . . ." 4 Blackstone, Commentaries, Wrongs, ch 17, p 242. However, as pointed out by Perkins, Criminal Law (2d ed), p 348, this quotation has been misapplied:

> If the two transactions are essentially distinct-if subsequent to the larceny the owner should come upon the thief and be prevented from retaking his property by force or violence-- the thief would be guilty of larceny and assault, but not robbery. But if the violence or intimidation is part of the *res gestae* of the larceny the offense is generally held to be elevated to the category of robbery . . . . [*Id*. at 349.]

The majority attempts to distinguish this quotation from Perkins in three ways, all of which are unavailing. First, the majority states that the dissent "fails to set forth the full quotation from Perkins and therefore misunderstands the point that Perkins was making." Slip op at 11, n 9. To demonstrate that the "transactional view" is not only consistent with the statute and Michigan case-law, but also consistent with the common law as reflected by Blackstone, we set forth the language from Perkins in full. Following the disputed quotation from Blackstone, Perkins writes:

> Occasionally this has been misapplied. For

30

example, during a chance meeting D suggested he might be interested in buying the gun X was carrying and asked permission to examine it, which was granted. Finding the gun loaded D then pointed it at X and told him to run for his life. As X backed away, D ran off with the weapon. A conviction of robbery was reversed on the theory that the resort to intimidation was after the acquisition of the gun.[20] This completely overlooks the distinction between possession and custody. When D received the gun to examine momentarily in the presence of X, D had custody only. Had he run off with the gun without violence or intimidation he would have been guilty of larceny because this would have been a trespassory taking and carrying away with all the elements of that offense. And since he actually did this under a threat to kill he clearly committed robbery, as the same court had held earlier under an equivalent set of facts. And a motorist whose tank had been filled with gas at his request, after which he held off the attendant at gunpoint, under threat to shoot while he drove away without making payment, was properly convicted of robbery. Furthermore, if one snatches property from the hand of another and uses force or intimidation to prevent an immediate retaking by the other, this is all one transaction and constitutes robbery. If the two transactions are essentially distinct,–if subsequent to the larceny the owner should come upon the thief and be prevented from retaking his property by force or violence, the thief would be guilty of larceny and assault, but not robbery. But if the violence or intimidation is part of the *res gestae* of the larceny the offense is generally held to be elevated to the category of robbery, although there is still some authority for the earlier view that

---

[20] As the majority points out, Perkins disagrees with the reversal of this conviction, and the basis of his disagreement lies in the rationale supporting the reversal that "resort to intimidation was after the acquisition of the gun." This supports the view that the force required to convict one of robbery may occur subsequent to the initial wrongful taking.

force or intimidation used to retain possession of property taken without it, is not sufficient. [Perkins, *supra* at 348-349.]

The majority concedes that, in the first example given by Perkins, "the thief initially had mere custody of the weapon, but his possession of the weapon was secured by threat of force." Slip op at 11, n 9. In this case, defendant, likewise, had mere custody of the items, and the attempt to gain complete possession of the items, that is, to remove the items from the presence of the security guards, was secured by the use of force. As explained elsewhere, the successful escape with the property, or the complete removal of the property from the presence of the victim, is not a necessary element of robbery. Rather, escape and such removal merely indicate the end point of the "transaction."[21]

Second, the majority states that Perkins' use of the

---

[21] The majority asserts that defendant's "use of force or violence was not to *take* the property, but to retain it and escape apprehension. It follows that defendant did not commit the offense of unarmed robbery." Slip op at 18. However, defendant attempted to escape apprehension with the property. Thus, defendant did use force in an attempt to complete his wrongful possession of the property. Further, we do not, as the majority suggests, support "the fiction . . . that a robbery is not complete until a defendant reaches temporary safety." Slip op at 10. Rather, we believe that a robbery may be completed whenever a perpetrator uses force to resist or to escape before the time that he reaches a place of temporary safety.

32

words "'res gestae' . . . does not suggest an expansive 'transactional' view of robbery, rather it narrowly refers to the events occurring contemporaneously with the taking—precisely the time frame in which the application of force must occur." Slip op at 12, n 9. However, "res gestae" in terms of the law, and in the context in which Perkins used it, simply means "[t]he whole of the transaction under investigation and every part of it." It means "things or things happened." Indeed, a *res gestae* witness is defined as "[a]n eyewitness to some event in the continuum of the criminal transaction and one whose testimony will aid in developing a full disclosure of the facts surrounding the alleged commission of the charged offense." Black's Law Dictionary (6th ed). Thus, that the use of force against the owner of property occurs after the latter observes the wrongful acts of the perpetrator would seem not to be particularly relevant to analyzing whether a robbery occurs because the conduct of the perpetrator occurs as part of an unbroken sequence of events. The concept of res gestae, in the context in which it is used by Perkins, is wholly consistent with the view that the perpetrator's use of force before, contemporaneously with, or immediately after he is observed taking property in the presence of the victim

provides the requisite force required to convict the perpetrator of robbery.

Third, the majority states that the quotation from Perkins supports, rather than contradicts, the interpretation of Blackstone's quotation. Slip op at 12, n 9. We do not disagree that Perkins' quotation supports Blackstone's concept of robbery. As Perkins notes, the quotation has been *misapplied*. And as explained in this dissent, it has been misapplied in the same manner that the majority seeks to apply it in their opinion. The quotation has been misapplied to mean that force used at any time after an initial seizure of property from the person or from his presence by the perpetrator cannot constitute the crime of robbery.

However, a closer analysis of the common-law crime of robbery explains the misunderstanding. Blackstone's quotation contemplates a "private stealing", one which is not discovered until the perpetrator and the property have left the presence of the victim. Use of the words "private stealing" is significant, because it specifies what, at common law, was a theft by stealth, or a theft completed without the victim's knowledge. Blackstone explicitly contemplates that force used by one after he "privately steals" is not considered a robbery. The quotation from Perkins likewise contemplates the

34

distinction between a private stealing, and the use of force during the time that the property is being taken.  Perkins states: "If the two transactions are essentially distinct,—if subsequent to the larceny the owner should come upon the thief and be prevented from retaking his property by force or violence, the thief would be guilty of larceny and assault, but not robbery."  *Id*. at 349.

Blackstone's use of the phrase "private stealing" is perhaps better understood by the definition of the common-law crime of robbery given by Sir Edward Coke, the preeminent chief justice of England, and author of the comprehensive Institutes of the Laws of England.  In defining the crime of robbery, Coke stated:

> Robbery is a felony by the common law, committed by a violent assault, upon the person of another, by putting him in fear, and taking from his person his money or other goods of any value whatsoever. [Coke (1797), pt 3, p 68.]

Coke explains the difference between the private stealing and the use of force by the robber by distinguishing between the "cutpurse"[22] and the "robber."  In this regard, he states that:

---

[22]    A "cutpurse" is defined by the Oxford English Dictionary as "[a] person who stole by cutting purses from the girdles from which they were suspended; a pickpocket, a thief."  The New Shorter Oxford English Dictionary (1993).

both take [property] from the person,[23] but [the cutpurse] takes it *clam et secrete*,[24] without assault or putting in fear, and the robber by violent assault, and putting in fear. [*Id*. at 68.]

Next, in defining the term "taking," Coke describes the situation in which the cutpurse cuts the strings of the victim's purse and the purse then falls to the ground. In this situation, there is no robbery because the perpetrator never has possession. *Id*. However, if the perpetrator picks up the purse, and then, "in striving . . . let[s] it fall and never [takes] it again,"[25] this, according to Coke, is a "taking" within the meaning of common-law robbery, "because he had it in his possession; the continuance of his possession is not required by the law" and after it was secretly in his possession, the use of force occurred. *Id*.

It is evident from this explanation by Coke, that the distinction between one who successfully "privately steals," as referenced by Blackstone, and the one who, attempting to

---

[23] As explained, both at common law, and under Michigan's statutes, this includes property "in the presence" of the victim.

[24] "To keep secret, to conceal or hide." The New Shorter Oxford English Dictionary (1993).

[25] The word "striving" is defined as to "[e]ngage in violent conflict, struggle (with or against an opponent, for a thing). The New Shorter Oxford English Dictionary (1993).

privately steal, is discovered in the process, and uses force in order to complete the taking, is the distinction between the cutpurse and the robber. It is also evident, from Coke's description, that force used after the initial taking of the property may still give rise to the crime of robbery. The common-law description of the crime of robbery is, as the dissent demonstrates, consistent with the above quotation from Perkins, and consistent with MCL 750.530.

Clearly, the common-law description of robbery also supports a conviction in the present case. The defendant, like the cutpurse, first took the property in an attempt to secretly steal it. However, here there was no "private stealing". After being observed taking the property and upon being confronted by the security guards, defendant assaulted them in an effort to remove the property from their presence. In striving with the guards, the property fell to the ground.[26]

_____

[26] The majority wishes to assert that there were two separate incidents here, a larceny and an assault. While legally, there was an initial larceny, that crime was elevated to a robbery when the perpetrator used force in order to finally exercise possession of the property. That defendant was observed taking the property in the store, and chose to use force only after being confronted by the security guards, does not in any way transform the defendant's use of force to permanently deprive the owner of his property. Furthermore, the completed larceny in this case in no way removed the property from the presence of the security guards, as they
(continued...)

The perpetrator took possession of the property while it remained in the presence of the security guards, and there is no necessity that he used force to initially take the property, but only that he strove to keep it, however unsuccessfully.[27]   Thus, both at common law, and consistent

---

[26](...continued)
continued to exercise protective custody and control over the property.

[27]   The majority states that the dissent leaves the majority "without a satisfactory explanation" why it would permit a use of force that does not accomplish a taking to increase an offense of larceny to unarmed robbery.  Slip op at 19.  However, we reiterate that robbery is a crime against the person and not against property.  *Hendricks*, *supra* at n 10.  That the security guards waited to confront defendant in the parking lot does nothing to negate the fact that, in furthering his criminal purpose, defendant assaulted them while the property was still in their presence.  This incident satisfied the criminal conduct that the statute seeks to punish.  Thus, it is entirely reasonable to conclude that, under the statute, the crime of robbery is complete when the perpetrator uses force at any time during the transaction before his reaching a place of temporary safety, i.e., before escape.  There is no necessity of escape, nor is there a necessity that the perpetrator successfully sever the victim's possession, which, as we explain is the same as a successful escape.  A person may not be convicted of robbery if he successfully escapes, thereby, in fact removing the property from the presence of the victim, and afterwards uses force against those who attempt to apprehend him.  A successful escape simply designates the end point of the transaction, and it is that point in time after which the property is no longer in the victim's presence and after which the use of force against those seeking to apprehend the perpetrator for the earlier larceny would be merely an assault.  Therefore, it does not, as the majority asserts, "def[y] logic to say that, when a defendant commits larceny but loses possession of the
(continued...)

with the statute, there is no necessity that the force element of robbery occur before or contemporaneously with the initial taking. Force used after the initial taking, where the latter occurs under the observation of the victim, and while the property can be said to remain in the victim's presence, is sufficient to constitute the crime of robbery.

Finally, I would point out that the transactional approach to robbery has the added practical advantage of being defined by a fixed beginning and end. Where does the majority draw this line? Can one never be convicted of robbery if he uses force to retain property or to escape simply because such force occurs after he has initially taken the property? When does the majority believe that a taking is completed? If a

---

[27](...continued)
property during a struggle, defendant's crime can be elevated to unarmed robbery." Slip op at 23, n 23.

Further, the decision by the victim of a robbery to wait to confront one who has unlawfully taken property may be, in the case of a business, at least in part a matter of practical business judgment. It does not seem unreasonable for such a business to wait until the perpetrator is outside its store in order to avoid a violent confrontation within the store and to protect its property and customers. Because robbery is a crime against the person, it is the conduct of the perpetrator who resorts to violence to further his criminal design, and not the judgment of the business when to confront the perpetrator, that should be analyzed in considering whether a robbery has occurred.

39

perpetrator does not use force at the moment he physically removes property from the shelf of a market and conceals it, would it be sufficient if he uses force when he is prevented from leaving the proximity of that shelf; when attempting to leave the particular aisle or department; when passing through the checkout area; or when attempting to leave the store itself?  Is the fact that one purports to conceal the property beneath his clothes sufficient to find that he could not thereafter commit a robbery?  In contrast to the lack of the majority's definition of "contemporaneous", the transactional approach to robbery recognizes that the use of force that occurs at any time before the perpetrator of a larceny has reached a place of temporary safety transforms such larceny into a robbery.[28]

Quite in addition to the fact that it is wrong in its understanding of the law of robbery in Michigan, the practical consequence of the majority's opinion is as follows: in every instance in which a person who has stolen property from a

---

[28]  The majority states that this dissent "asserts, *without supporting authority*, that 'for the purpose of the crime of robbery, the relevant act encompasses a broader spectrum of time . . . ."  Slip op at 14.  (emphasis added).  Although perhaps this dissent has not persuaded the majority of the merits of its position, see, nonetheless, pp 1-38, *supra*.

store in an amount less than $200,[29] as in this case, and who, before escaping with such property is confronted by and engages in violence against the victim, such person will be guilty merely of third-degree retail fraud and assault, rather than the greater crime of robbery. Instead of being subject to a potential 15-year sentence for robbery, MCL 750.530, the perpetrator will be subject to punishment of no more than 93 days in jail for the third degree retail fraud, MCL 750.356(5) and MCL 750.356d(4)(b), and no more than one year in jail if the subsequent assault is a serious assault under MCL 750.81 and MCL 750.81a. Further, the majority fails to take into account MCL 750.356d(5), which expressly prohibits prosecution under MCL 750.360, larceny from a building, where a person commits third-degree retail fraud.[30] See also *People v Ramsey*, 218 Mich App 191, 195; 553 NW2d 360 (1996). If, as the majority holds, there can be no robbery under these circumstances, and there can be no independent prosecution of

---

[29] See MCL 750.356d(4)(b).

[30] Defendant in the instant case took property from the store offered for sale for approximately $120. MCL 750.356d(3) also prohibits prosecution for larceny from a building under MCL 750.360, of one who is guilty of second degree retail fraud, defined in MCL 750.356d(a) as occurring where a person steals items from a store that have a value of greater than $200 but less than $1000.

41

defendant for larceny from a building where the perpetrator commits second or third degree retail fraud as in the instant case, then the disparity in penalties between robbery and what the defendant here can be charged with is quite substantial.[31]

We do not criticize the majority on account of this disparity, because it is their obligation to faithfully interpret the law as they see it, and they have done that here. It is not their obligation to correct what they might (or might not) view as inexplicable disparities in criminal punishments. We *do* suggest, however, that such a substantial disparity in punishments, based upon whether the violence occurred contemporaneously with the taking, or immediately

---

[31] While the majority is correct in citing *Ramsey* for the proposition that "one charged with unarmed robbery can be convicted of larceny in a building even where the underlying facts would support a finding of retail fraud," slip op at 24, n 23, that was a case that applied the transactional view of robbery to facts nearly identical to those in the instant case. There, the court correctly held that larceny in a building is a cognate lesser included offense of unarmed robbery and that one charged with unarmed robbery can be convicted of larceny in a building, even where the underlying facts support a finding of retail fraud. However, the court also clearly stated that this scenario is true, only "where the facts support ... a charge [of unarmed robbery]." *Id.* at 194. Because the majority is holding that there can be no unarmed robbery in cases such as *Ramsey* and this case, and because, where a person commits retail fraud in the second or third degree, he cannot be charged with larceny from a building under MCL 750.356d, our analysis of the disparity in penalties remains correct.

thereafter as part of the same transaction, could never reasonably have been contemplated by the Legislature.

CONCLUSION

In my judgment, the "transactional view" of robbery as it has been described in this opinion, is deeply rooted both in the common law, and in the Michigan statute and case law. Under the "transactional view", a person can be convicted of robbery if, before reaching a place of temporary safety, such person uses force to permanently deprive an owner of the actual or constructive possession of his property. Such force may either be employed in initially taking the property, in attempting to retain the property, or in attempting to escape with the property. Defendant here used force in an attempt either to retain the property or to escape with the property. Therefore, I would reverse the judgment of the Court of Appeals and reinstate defendant's unarmed robbery conviction.[32]

CORRIGAN, C.J., and WEAVER, J., concurred with MARKMAN, J.

---

[32] Because sufficient evidence existed to sustain defendant's conviction, there is no need here to address the majority's conclusion that the Court of Appeals erred in affording the prosecutor the opportunity to retry defendant.

43