[No. 23043–3–I.   Division One.   May 7, 1990.]

THE STATE OF WASHINGTON, *Respondent*, v. ROBERT
EDWARD MANCHESTER, *Appellant*.

*Rita Griffith* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Ellen O'Neill–Stephens, Deputy,* for respondent.

GROSSE, A.C.J.—Robert E. Manchester was charged with two counts of first degree robbery and one count of taking a motor vehicle without permission. After waiving his right to a jury trial, he was convicted on all counts. He appeals alleging that the evidence is insufficient to convict him of robbery and that his statements to the police were inadmissible.

The undisputed testimony given at trial establishes the following:

## COUNT 1

On May 7, 1988, Donaldson, a security officer at a Safeway store, observed Manchester place several cartons of cigarettes in his coat. Donaldson and another store employee went outside the store to apprehend Manchester when he exited the store without paying. Outside the store doors, Donaldson flashed his badge at Manchester and escorted him back into the Safeway store, while holding onto Manchester's arm. Manchester resisted Donaldson and eventually broke away from his grasp. Manchester then displayed a knife with a 4– to 5–inch blade as he made his way to the exit. When another employee pushed a grocery cart at Manchester to prevent his escape, Manchester waved the knife at him and then escaped in a car.

## COUNT 2

On June 24, 1988, Hollingsworth, the grocery manager at the Food Merchant, watched from a distance of about 15 to 18 feet as Manchester placed a carton of cigarettes under his coat and then walked out of the store. Hollingsworth followed Manchester, tapped him on the shoulder, and asked him what he did with the cigarettes. Manchester said he had a gun and threatened to blow out Hollingsworth's brains. After Manchester took several more steps, Hollingsworth repeated his question. Manchester then pulled an ice pick out of his pocket and displayed it. Hollingsworth pursued Manchester around a corner of the building and again demanded the cigarettes. Manchester threw the cigarettes at Hollingsworth and left.

## COUNT 3

On June 26, 1988, King County sheriff's deputies stopped a stolen black Mercury Cougar automobile and arrested the occupants, including Manchester. The arresting officer advised Manchester of his right to counsel and his right to remain silent. During the drive to the police station, Manchester did not indicate that he wished to speak with an attorney.

At the station, Manchester identified himself as Terry Tyler. Officer Morrow advised Manchester of his constitutional rights and he signed a standard rights form as Terry Tyler. After Manchester indicated he did not want to make a statement, he was placed in a holding cell. Shortly thereafter Officer Johnson, who knew Manchester, correctly identified him. Officer Morrow, with Officer Johnson present, readvised Manchester of his rights using his real name and Manchester signed another standard rights form. Officer Johnson then asked Manchester some questions to which he responded. At no point did Manchester request an attorney.

The first issue presented on appeal is whether the evidence was sufficient to convict Manchester of two counts of first degree robbery when he took items from the grocery stores unaware he was being observed, exited the buildings, and then displayed a weapon only when employees tried to recover the property or attempted to detain him at the store. First degree robbery and robbery are defined as follows:

> (1) A person is guilty of robbery in the first degree if in the commission of a robbery or of immediate flight therefrom, he:
> (a) Is armed with a deadly weapon; or
> (b) Displays what appears to be a firearm or other deadly weapon; or
> (c) Inflicts bodily injury.

RCW 9A.56.200.

> A person commits robbery when he unlawfully takes personal property from the person of another or *in his presence against his will* by the use or threatened use of immediate force, violence, or fear of injury to that person or his property

or the person or property of anyone. *Such force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking*; in either of which cases the degree of force is immaterial. Such taking constitutes robbery whenever it appears that, although the taking was fully completed without the knowledge of the person from whom taken, such knowledge was prevented by the use of force or fear.

(Italics ours.) RCW 9A.56.190.

Manchester offers two arguments based on the robbery statutes. First, he correctly states that robbery in the first degree requires that the defendant unlawfully take personal property from a person or in the presence of another against his will. He then argues he did not take property from another or in their presence because, on both counts, he was unaware of any persons near him and the employees were a significant distance from him. In a second argument, he maintains that even if he took the property in the presence of another, he did not use immediate force, violence, or fear of injury against that person because the crimes were completed before he displayed or used a weapon.

Manchester's arguments merit serious consideration. No Washington case law has interpreted the language "in his presence". Previously, courts have upheld convictions for robbery when the victim is absent, but only when force or fear was used to prevent the victim from being present when the robbery occurred. *State v. McDonald,* 74 Wn.2d 141, 443 P.2d 651 (1968); *State v. Blewitt,* 37 Wn. App. 397, 680 P.2d 457 (1984), *review denied,* 103 Wn.2d 1017 (1985). That exception does not apply to the case at bar.

It is undisputed that Manchester did not know he was being watched when he took the cigarettes. Assuming Manchester used no force or threats until the takings were complete, it is debatable whether the taking was in the presence and against the will of the employees, as required under RCW 9A.56.190. The word "presence" in this context has been defined as a taking of something

"so within [the victim's] reach, inspection, observation or control, that he could, if not overcome with violence or prevented by fear, retain his possession of it."

(Footnote omitted.) 4 C. Torcia, *Wharton on Criminal Law* § 473 (14th ed. 1981). Manchester argues that this definition, together with the requirement in the statute that the taking be in the victim's "presence against his will", suggests that no taking in the "presence" and against the will of the victims could have occurred in this case until the confrontations outside the stores.

This leads to the question of whether a robbery can be charged under the statute if the defendant uses no force until after the taking is legally complete. Manchester argues that the robbery statute requires that the use of force occur prior to completion of the taking. Since the takings in this case were complete, at least according to the trial court's findings, before the defendant used any force or threats, Manchester maintains his use of force occurred too late to constitute robbery.

■ The fatal flaw in Manchester's argument is that it ignores the plain language of the statute: "force or fear . . . used to . . . retain possession of the property, or to prevent or overcome resistance to the taking . . .". RCW 9A.56.190. In each instance, it is undisputed that Manchester used force to retain at least some of the stolen property. In doing so, his actions fall squarely within the provisions of the statute. Based on a robbery statute that is substantially similar, the Oregon courts reached the same conclusion when faced with equivalent facts. *See State v. Tolson,* 24 Or. App. 657, 546 P.2d 1115 (1976); *State v. Rios,* 24 Or. App. 393, 545 P.2d 609 (1976).

Other jurisdictions considering the issue are split on whether force used only to retain property or effectuate an escape constitutes robbery. *See* 4 C. Torcia, *Wharton on Criminal Law* § 478 (14th ed. 1981). *See generally* Annot., *Use of Force or Intimidation in Retaining Property or in Attempting to Escape, Rather Than in Taking Property, as Element of Robbery,* 93 A.L.R.3d 643 (1979); 67 Am. Jur. 2d *Robbery* § 28 (1985); *People v. Beebe,* 70 Mich. App. 154, 245 N.W.2d 547 (1976).

The minority view requires the use of force preceding or contemporaneous with the physical taking of property to constitute robbery. *State v. Wilborn,* 525 S.W.2d 87 (Mo. Ct. App. 1975); *Mason v. Commonwealth,* 200 Va. 253, 105 S.E.2d 149 (1958). The majority of jurisdictions favor a transactional view that does not consider the robbery complete until the assailant has effected his escape. *People v. Anderson,* 64 Cal. 2d 633, 414 P.2d 366, 51 Cal. Rptr. 238 (1966); *State v. Velicka,* 143 Conn. 368, 122 A.2d 739 (1956); *People v. Sanders,* 28 Mich. App. 274, 184 N.W.2d 269 (1970); *State v. Hope,* 317 N.C. 302, 345 S.E.2d 361 (1986); *Rumph v. State,* 544 So. 2d 1150 (Fla. Dist. Ct. App. 1989). Because this approach does not follow the common law, courts focus on the language in the robbery statute to reach this result. *See Rumph,* 544 So. 2d at 1151. (The Florida Legislature amended its robbery statute to include force used in flight after the taking, in order to overrule a Florida Supreme Court decision that adopted the minority view.)

■ The broader transactional view comports with the current Washington robbery statute. In addition, a 1975 amendment to the robbery statute deleted language that said force or fear used "merely as a means of escape . . . does not constitute robbery." This change indicates the Legislature's intent to broaden the scope of taking, for purposes of robbery, by including violence during flight immediately following the taking. We adopt the transactional view and affirm the robbery convictions under the circumstances shown to have occurred here.

Manchester argues his custodial statement to the arresting officers was inadmissible because the police initiated further questioning after he had stated he wished to remain silent. His statement, that he assumed the car he was driving was stolen, was the principal proof offered by the State to prove count 3, taking a motor vehicle without permission.

■■ Prior to custodial questioning, the police must advise the accused of his right to remain silent and his right

to have counsel present during questioning. *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966). In this case, Manchester was advised of his rights using a standard explanation of rights form. He did not request an attorney, but stated he did not wish to make a written statement. Using his correct name, officers advised Manchester of his constitutional rights a second time, using a standard explanation of rights form. Again, he did not request an attorney. Instead he stated he did not want to make a written statement but verbally responded to questioning by Officer Johnson. We hold that Manchester did not invoke his Fifth Amendment right to counsel. *State v. Stewart*, 113 Wn.2d 462, 472, 780 P.2d 844 (1989), *cert. denied*, 110 S. Ct. 1327 (1990). Even if Manchester had refused to make a written statement until his attorney was present, his oral statement would be admissible. *Connecticut v. Barrett*, 479 U.S. 523, 93 L. Ed. 2d 920, 107 S. Ct. 828 (1987). Under these circumstances the record does not establish that Manchester's constitutional right to counsel was violated. *State v. Stewart, supra.* The court correctly admitted the statements into evidence.

Affirmed.

WEBSTER and FORREST, JJ., concur.

Reconsideration denied June 5, 1990.

Review denied at 115 Wn.2d 1019 (1990).