150 P.3d 617 (2007)
STATE of Washington, Respondent,
v.
Chamroeum NAM, Appellant.
No. 33567-1-II.
Court of Appeals of Washington, Division 2.
January 17, 2007.
*618 Thomas Edward Doyle, Hansville, WA, Patricia Anne Pethick, Tacoma, WA, for Appellant.
James C. Powers, Thurston County Prosecuting Attorney Office, Olympia, WA, for Respondent.

PUBLISHED IN PART OPINION
BRIDGEWATER, P.J.
¶ 1 Chamroeum[1] Nam appeals his convictions for attempted first degree kidnapping domestic violence, and first degree robbery domestic violence, based on an incident when he assaulted his girlfriend in the car and stole her purse. We hold that the State failed to produce sufficient evidence that he took the purse from his girlfriend's person because the purse was on the seat of the car; thus we reverse the robbery conviction and dismiss it with prejudice. We also hold that the trial court made several evidentiary errors, necessitating a new trial regarding the attempted first degree kidnapping charge. We reverse both convictions and remand for new trial on the attempted first degree kidnapping charge only.

FACTS
¶ 2 This case involves a domestic relationship between Chamroeum Nam and Tanya Harris. Nam and Harris had a child in August 2000. In early 2004, they were living with Harris's father in Thurston County. But their relationship was troubled. On February 27, 2004, Harris told Nam that he had to move out of her father's house. Nam told Harris that he was "not going nowhere." 2 RP (June 14, 2005) at 160. Harris testified that Nam was upset and that he pushed her onto the bed. Despite his refusal, Harris grabbed her car keys and left to go to work, leaving him at the house. The record does not show when Nam actually moved out of the house.
¶ 3 On March 6, 2004, eight days after Harris asked Nam to leave, Nam assaulted Harris, leading to the present charges. That day, Nam called Harris and asked to see their child. Harris told him no. Although she did not have a restraining order, in an attempt to keep him away, she warned him *619 that she did have one against him. Despite her warning, Nam was waiting outside Harris's father's house in a red car.
¶ 4 Harris, who was driving her own car, pulled up next to Nam's car, rolled down the window, and asked him what he was doing. He replied that he wanted to see his son. Nam then got out of his car and walked over to hers. He reached in through the open window, opened the car door, and tried to get into the car and take the keys. At the same time, Nam was choking and hitting Harris. Harris testified that Nam was trying to put the gearshift into drive. But Harris managed to keep her foot on the brake and flip the gearshift back into park. During the attack, she was screaming and yelling for help because she thought he was trying to drive her away.
¶ 5 Nam's attack was, at this point, interrupted when a neighbor, Nathan Clinton, came out of a nearby house saying that he was going to call the police. Clinton testified that he saw a man and a woman struggling in the car, but he could not tell if the man was trying to push the woman in the car or pull her out. When talking to 911, however, he told the dispatcher that the man had been trying to pull her out of the car. In any case, as Clinton was yelling to his wife, the man got out the car, cursing and walked away. But Clinton could not remember the man's face.
¶ 6 Harris also testified that Nam robbed her during the attack taking her purse which had been next to her in the passenger seat of the car. When Nam was getting out of Harris's car after assaulting her, he reached behind her, grabbed something, and then got out. Only after the attack did she realize that her purse, which contained her cell phone, money, and license was missing.
¶ 7 During the trial, the court allowed the State to present evidence from the deputy who responded to Clinton's 911 call. The trial court reasoned that Harris's statements to the deputy were excited utterances. The deputy reported that Harris was bleeding from the nose and ear. Harris told the officer that she was afraid that Nam was trying to take her away in the car.
¶ 8 The State charged Nam with one count of first degree robbery and one count of attempted first degree kidnapping and alleged domestic violence in both counts. The trial began on June 13, 2005.
¶ 9 At trial, the court admitted several pieces of evidence over defense objections. It allowed Harris to testify about an incident in which Nam may have taken her car. On February 27, 2004, the day that she asked Nam to leave, Harris noticed that her car was missing while she was at work. She later discovered the car parked in front of an apartment building in Olympia. She also testified that Nam's friends lived down the street from this building. The trial court ruled that this testimony was relevant to give context to Harris's testimony. The court also found it was relevant to her mental state and to the defendant's intent as it was part of a sequence of events leading to the March 6 assault. The State presented no other evidence linking Nam to the disappearance of Harris's car.
¶ 10 The State also introduced several phone calls Nam made from the jail to his sister and an unidentified man in January 2005 as evidence of Nam's consciousness of guilt. Nam made the calls on January 13, 14, and 19, 2005. In these phone calls, Nam acknowledged that if Harris testified, he was going to lose the case. He also encouraged his sister to write down Harris's license plate number and that he would "send someone to deal with her or get rid of her." CP at 134. He also suggested that his sister try to talk Harris out of testifying by reminding her that it would take him away from his son.
¶ 11 In addition, the State introduced a no-contact order dated January 15, 2005, to show that Harris was afraid of Nam and that Nam was trying to contact her against her will. The trial court admitted the no-contact order as relevant to the victim's state of mind.
¶ 12 In addition to these evidentiary rulings, the trial court denied Nam's request to give an unlawful restraint instruction as a lesser-included offense of attempted kidnapping. The trial court also gave the State's proposed instruction defining robbery as taking personal property from the victim's person. *620 The State omitted the statutory language criminalizing taking personal property in a victim's presence. Nevertheless, the jury convicted Nam on both the attempted first degree kidnapping and the first degree robbery charge.

ANALYSIS

I. Insufficient Evidence for Robbery Conviction
¶ 13 Nam contends that the State assumed the burden of proving that he took personal property from Harris's person but that the evidence only proves that he took her purse in her presence. The State candidly admits that under the law of the case doctrine it was required to prove that Nam took something from Harris's person but argues that "person" in the statute can extend to a purse on a passenger seat next to a robbery victim. RCW 9A.56.190. We reject the State's contention and hold that there was insufficient evidence to support Nam's robbery conviction.
¶ 14 Because the State's evidentiary burden was to prove all elements of a crime beyond a reasonable doubt, we must first look to what elements the State had to prove in order to determine if the evidence is sufficient. We review statutory interpretation questions de novo. State v. Swecker, 154 Wash.2d 660, 665, 115 P.3d 297 (2005). When interpreting a statute, our primary objective is to carry out the legislature's intent. State v. Young, 125 Wash.2d 688, 694, 888 P.2d 142 (1995). To determine intent, we first look to the statute's language. Young, 125 Wash.2d at 694, 888 P.2d 142. While the court may not look beyond unambiguous statutory language, the court must read the statute as a whole and harmonize each provision. State v. Thorne, 129 Wash.2d 736, 761, 921 P.2d 514 (1996). In harmonizing provisions, we give meaning to every word the legislature includes in a statute so as to avoid rendering any included words superfluous. State v. Cooper, 156 Wash.2d 475, 483, 128 P.3d 1234 (2006).
¶ 15 Under the criminal statutes, a defendant may be found guilty of robbery where the State proves he "takes personal property from the person of another or in [her] presence against [her] will by the use or threatened use of immediate force." RCW 9A.56.190 (emphasis added). The statute thus defines robbery to include two alternatives: taking from a victim's person or taking property in a victim's presence.
¶ 16 Personal property is within a victim's presence when it is "within [the victim's] reach, inspection, observation or control, that [she] could, if not overcome with violence or prevented by fear, retain [her] possession of it." State v. Manchester, 57 Wash.App. 765, 768-69, 790 P.2d 217 (1990) (quoting C. TORCIA, WHARTON ON CRIMINAL LAW § 473 (14th ed.1981)), review denied, 115 Wash.2d 1019, 802 P.2d 126 (1990).
¶ 17 The parties did not cite, and our review did not disclose, a Washington case defining when something is taken from another's "person" in the context of the robbery statute. The literal interpretation of taking something from another's person would be to take something on the person's body or directly attached to someone's physical body or clothing. That is consistent with one legal scholar's definition. 3 WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 20.3 at 179 (2nd ed. 2003) ("Property is on the victim's person if it is in [her] hand, the pocket of the clothing [she] wears, or is otherwise attached to [her] body or [her] clothing.")
¶ 18 The State urges us to reject this plain definition and interpret "person" to include objects that a person constructively possesses "within the easy reach." Br. of Resp't at 12. To support its position, the State cites to State v. Valdobinos, 122 Wash.2d 270, 282, 858 P.2d 199 (1993), in which the court interpreted the statutory enhancement for being armed during the commission of a felony. Our Supreme Court interpreted "armed" to mean "when a weapon is easily accessible and readily available for use." Valdobinos, 122 Wash.2d at 282, 858 P.2d 199.
¶ 19 The problem with the State's proposed interpretation is that it would render the language "or in [her] presence" superfluous. As indicated above, the presence language already includes taking property within the victim's reach. Manchester, 57 Wash. *621 App. at 768, 790 P.2d 217. If the legislature intended "person" to include objects within easy reach, it would not have had to include the language about presence. Because we avoid rendering statutory language superfluous, we follow LaFave's definition in holding that there is no ambiguity in the statutory language and that "person" in our robbery statute means something on or attached to a person's body or clothing. This definition gives meaning to both terms.
¶ 20 The State argues that the terms "person" and "presence" are not mutually exclusive. Br of Resp't at 11. For support, it cites State v. Grant, 77 Wash.2d 47, 50, 459 P.2d 639 (1969). In Grant, our Supreme Court reasoned that "[w]hile personal property may be taken from the victim's presence without being taken from his person, it cannot be taken from his person without begin taken in his presence." Grant, 77 Wash.2d at 50, 459 P.2d 639.
¶ 21 But even if there is overlap between the two terms, the Grant court defined that overlap in only one direction. The language in the prohibiting taking something from a victim's presence may cover the situation in which something is taken from a victim's person. Grant, 77 Wash.2d at 50, 459 P.2d 639. But this does not mean the opposite is true. While a general term, like presence, may overlap somewhat with the more specific language, "from the person of another," they are not equivalent terms. Therefore, Grant does not compel us to accept the State's assertion that we should interpret from "the person of another" broadly. RCW 9A.56.190.
¶ 22 We note that this will only matter where the State voluntarily elects to omit the "presence" language in the charging document or instructions. RCW 9A.56.190. In that circumstance, the State assumes the burden of proving the elements as instructed or charged. State v. Hickman, 135 Wash.2d 97, 101-02, 954 P.2d 900 (1998).
¶ 23 Here, the instructions the State proposed required it to prove that "on or about the 6th day of March, 2004, the defendant unlawfully took personal property from the person of another." CP at 104. Thus, this case falls within the category of cases where the distinction between person and presence will matter. Applying the correct definition of "from the person of another," we must therefore determine if the State produced sufficient evidence to support a jury verdict that Nam took personal property that was on or attached to Harris's person.
¶ 24 We review a challenge of the sufficiency of the evidence to determine whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. State v. Green, 94 Wash.2d 216, 220-22, 616 P.2d 628 (1980). When the sufficiency of evidence is challenged in a criminal case, we resolve all reasonable inferences from the evidence in favor of the State and interpret them most strongly against the defendant. State v. Partin, 88 Wash.2d 899, 906-07, 567 P.2d 1136 (1977).
¶ 25 Even interpreting the evidence most strongly against Nam, the State failed to introduce sufficient evidence to prove that Nam took personal property from Harris's person. Harris testified that she had her purse sitting next to her on the passenger seat. After Nam assaulted her, he reached behind her and took something. No evidence suggests that the purse was attached to Harris at any point during the encounter. She did not testify, for example, that she was holding the purse or that its strap was over her shoulder. Accordingly, the State did not prove that Nam took the purse from Harris's person.
¶ 26 Where the State assumes the burden of proof on an element and we find that there is insufficient evidence on that element, we must reverse the conviction and dismiss with prejudice. Hickman, 135 Wash.2d at 103, 954 P.2d 900. Therefore, we reverse the robbery conviction and the trial court must enter an order dismissing with prejudice.
¶ 27 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder *622 shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
We concur: ARMSTRONG and PENOYAR, JJ.
NOTES
[1] We note in the record that the defendant's name is spelled two different ways. Chamrouem Nam and Chamroeum Nam. For the purposes of this opinion, we use the Chamroeum spelling.