

2013 JUL -8 AM 9: 14

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 68443-4-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| ELIJAH S. HALL, | ) | |
| | ) | |
| Appellant. | ) | FILED:  July 8, 2013 |

SCHINDLER, J. — Elijah S. Hall seeks reversal of his jury conviction for felony murder in the first degree, arguing that the State did not prove beyond a reasonable doubt the predicate offense of attempted robbery in the first degree.  Because sufficient evidence supports attempted robbery in the first degree, we affirm the conviction of felony murder in the first degree.

## FACTS

Seventeen year-old Elijah Hall "wanted to get some money" because he was "tired of being broke."  Hall decided he would go to the Pit Stop Express convenience store and " 'show [the clerk] the gun and he would hand the money over.' "  Hall had been to the Pit Stop Express many times before and knew the convenience store clerk, 28-year-old Manish Melwani.  At approximately 6:00 a.m. on Sunday, July 26, 2009, Hall left home to go to the Pit Stop Express to commit robbery.  Hall wore dark

sunglasses, a black knit cap, a black bandana, a black jacket, and carried a backpack and a snub-nosed semi-automatic revolver.

A security camera located behind the counter of the Pit Stop Express recorded the attempted robbery and shooting. The camera shows Hall, clad in his disguise, entering the convenience store at 6:28 a.m. Melwani is not behind the counter where the cash register is located. After looking at items in the store for about one minute, Hall goes behind the counter. Hall then leans over the cash register's keyboard and monitor and presses the cash register keys. A customer enters the store, sees Hall, and immediately leaves. The customer calls 911.

After unsuccessfully trying to open the register, Hall crouches down under the counter and opens drawers under the counter. Hall then stands up and continues trying to get into the cash register by pressing the keys. Hall briefly steps away and returns wearing gloves. While Hall continues to try to open the cash register, the camera shows Melwani return from the back of the store. Hall crouches down and immediately reaches for the snub-nosed revolver in the waistband of his pants. Melwani approaches the counter and confronts Hall. As Hall stands up, he removes the gun from his pants and points the gun at Melwani.

When Melwani walks around the counter toward Hall, Hall shoots Melwani in the stomach. Melwani then attempts to grab the gun away from Hall. Hall and Melwani struggle over the gun for approximately two minutes. During the struggle, two customers walk in but immediately leave and call 911.

Hall then rushes at Melwani and knocks Melwani off balance. Hall shoots Melwani a second time, this time in the right thigh. Hall then hits Melwani twice in the

2

forehead with the gun, dazing him, and leaves the store. Melwani chases after Hall but collapses at the store entrance.

Officers from the Seattle Police Department and medical personnel responded to the 911 calls. Medical personnel took Melwani to Harborview Medical Center. After initial attempts to treat Melwani, he later died from the two gunshot wounds.

Officers found a pair of sunglasses discarded near the store's counter and retrieved the videotape recording from the security camera. In an effort to identify the shooter, the police department released still frames from the video to the media.

After the 5:00 p.m. news segment aired that night, a citizen contacted police about clothing that was discarded outside an apartment building a few blocks from the Pit Stop Express. Officers found a black knit cap, a black bandana, gloves, and a black jacket in a duffel bag.

While police were collecting the evidence, Detective James Cooper noticed a young man and woman, later identified as Hall and his girlfriend Kiara Todd, watching police collect the evidence. Detective Cooper told Hall and Todd the police were investigating the Pit Stop Express robbery. Hall told Detective Cooper that he heard two gunshots that morning. The police department had not released any information about the number of shots fired.

The next day, Hall's friend Jaylyn Johnson spoke to police. Johnson told the police that he and Hall lived together. Johnson told police that the sunglasses the shooter wore belonged to his mother, and the black bandana belonged to him. Johnson also said he had seen the shooter's jacket in the laundry room of the home he shared with Hall.

3

The police interviewed Hall. During the interview, Hall admitted shooting Melwani. Hall told police officers, " 'I hoped that I would show him the gun and he would be scared and he would hand over the money.' "

The State charged Hall with felony murder in the first degree and unlawful possession of a firearm in the second degree. The State alleged that while attempting to commit robbery in the first degree, Hall killed Manish Melwani.

During a six-day jury trial, the State called a number of witnesses to testify, including the Pit Stop Express customers who called 911, police officers and detectives, a forensic expert, and the medical examiner. The court admitted the security camera videotape into evidence.

Forensic scientist Kari O'Neill identified Hall's DNA[1] on the discarded bandana and the interior of the gloves the officers found with the clothing at the apartment building. O'Neill also testified that the blood on the exterior of the gloves belonged to Melwani. King County Chief Medical Examiner Richard Harruff testified that Melwani died as a result of the gunshot wounds to the abdomen and the thigh.

Hall testified, admitted he was the person shown in the security camera video, and that he attempted to disguise himself. Hall also admitted telling the police that " 'I thought that the plan was going to be, okay, I planned, he would be behind the counter, it was going to be easier, I could just scare him with the gun.' " Hall testified that he knew he needed the clerk in order to open the cash register.

---

[1] (Deoxyribonucleic acid.)

4

In addition to instructing the jury on felony murder in the first degree and attempted robbery in the first degree, the court agreed to instruct the jury on the lesser included offense of felony murder in the second degree.

During closing argument, defense counsel told the jury that the State had not proved the elements of attempted robbery in the first degree because Melwani was not present "during the whole course of the encounter with the cash register." The defense argued, in pertinent part:

> [Hall] didn't take or attempt to take the personal property from the person or in the presence against a person's will. Mr. Manish Melwani is not out there during the whole course of the encounter with the cash register.
> We don't see my client trying to take anything or take anything in his presence. He certainly doesn't do anything to take anything from Mr. Manish Melwani's person.

In addressing the defense argument, the prosecutor argued, in pertinent part:

> When [defense counsel] tells you it is not from the person, or in the presence of, really we can never have a [robbery] that occurs, if the clerk has their back turned, or if the clerk is in the back room and the clerk interrupts.
> . . . Importantly, when you think about attempted robbery first degree, what did this young man plan for?
> He planned for an encounter with someone, when he formed his intent. That's what he prepared and planned for.

The jury convicted Hall as charged of felony murder in the first degree and unlawful possession of a firearm in the second degree. The court sentenced Hall to 331 months confinement.

5

ANALYSIS

Hall challenges his conviction for felony murder in the first degree. Hall asserts the State did not prove beyond a reasonable doubt the predicate offense of attempted robbery in the first degree. Hall argues the jury instruction defining robbery required the State to prove that the attempted taking occurred in the presence of another, and there was no evidence he used force when he first attempted to take money from the cash register.

The State bears the burden of proving every element of the crime beyond a reasonable doubt. State v. A.M., 163 Wn. App. 414, 419, 260 P.3d 229 (2011). In determining the sufficiency of the evidence, we must view the evidence in the light most favorable to the State, and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). In reviewing a challenge to the sufficiency of the evidence, we draw all reasonable inferences from the evidence in favor of the State and interpret the evidence most strongly against the defendant. Salinas, 119 Wn.2d at 201. A defendant claiming insufficiency of the evidence "admits the truth of the State's evidence." State v. Myers, 133 Wn.2d 26, 37, 941 P.2d 1102 (1997). We review jury instructions and questions of law de novo. State v. DeRyke, 149 Wn.2d 906, 910, 73 P.3d 1000 (2003).

To convict Hall of felony murder in the first degree, the State had to prove that while attempting to commit robbery in the first degree, he caused the death of Melwani. RCW 9A.32.030(1)(c).

To prove attempted robbery in the first degree, the State had to establish that while armed with a deadly weapon, Hall intended to take personal property against Melwani's will and took a substantial step toward the commission of the crime. RCW 9A.28.020(1), RCW 9A.56.190,[2] RCW 9A.56.200. A "substantial step" is conduct strongly corroborative of the actor's criminal purpose. State v. Aumick, 126 Wn.2d 422, 427, 894 P.2d 1325 (1995).

The jury can infer intent from all of the facts and circumstances. State v. Bencivenga, 137 Wn.2d 703, 709, 974 P.2d 832 (1999). "[W]here the design of a person to commit a crime is clearly shown, slight acts done in furtherance of this design will constitute an attempt." State v. Nicholson, 77 Wn.2d 415, 420, 463 P.2d 633 (1969).

A person commits robbery by unlawfully taking personal property by the use or threatened use of force to retain the property. State v. Johnson, 155 Wn.2d 609, 610, 121 P.3d 91 (2005). "Such force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking; in either of which cases the degree of force is immaterial." RCW 9A.56.190. The definition of "robbery" also includes "the retention, via force against the property owner, of property initially taken peaceably or outside the presence of the property owner." State v. Handburgh, 119 Wn.2d 284, 293, 830 P.2d 641 (1992).[3] A person commits robbery in the first degree if during the commission of a robbery, or in flight therefrom, the person inflicts bodily injury. RCW 9A.56.200(1)(a)(iii).

---

[2] We note the legislature amended RCW 9A.56.190 in 2011 to add the words "or her" after "his" throughout the statute. LAWS OF 2011, ch. 336, § 379.

[3] (Emphasis in original.)

Hall relies on the jury instruction defining robbery to argue that because Melwani was not at the cash register when Hall first attempted to open it, the attempted taking was not made "in the presence of another." Jury Instruction No. 9 defined "robbery" as follows:

> A person commits the crime of robbery when he or she unlawfully and with intent to commit theft thereof takes personal property from the person or in the presence of another against that person's will by the use or threatened use of immediate force, violence, or fear of injury to that person or to that person's property or to the person or property of anyone. The force or fear must be used to obtain or retain possession of the property or to prevent or overcome resistance to the taking, in either of which cases the degree of force is immaterial. The taking constitutes robbery, even if death precedes the taking, whenever the taking and a homicide are part of the same transaction.

Hall's argument is contrary to the "transactional" analysis of robbery first set forth in State v. Manchester, 57 Wn. App. 765, 770, 790 P.2d 217 (1990), and adopted by the supreme court in Handburgh, 119 Wn.2d at 290-91.

In Manchester, the defendant took cigarettes from a grocery store and left without paying. Manchester, 57 Wn. App. at 766. Outside the store, Manchester flashed a knife at a security guard who attempted to stop him. Manchester, 57 Wn. App. at 766. The court rejected Manchester's argument that he did not take property in a person's presence because the store employees were a significant distance away, and that he did not use force against anyone until after the taking was completed. Manchester, 57 Wn. App. at 768. The court held that the transactional view of robbery "does not consider the robbery complete until the assailant has effected his escape." Manchester, 57 Wn. App. at 770. The court defined "presence" as "a taking of something 'so within [the victim's] reach, inspection, observation or control, that he could, if not overcome with violence or prevented by fear, retain his possession of it.' "

8

Manchester, 57 Wn. App. at 768[4] (quoting 4 C. Torcia, Wharton's Criminal Law § 473 (14th ed. 1981)). The court concluded the defendant's arguments "ignore[d] the plain language of the statute: 'force or fear . . . used to . . . retain possession of the property, or to prevent or overcome resistance to the taking.' " Manchester, 57 Wn. App. at 769[5] (quoting RCW 9A.56.190).

In Handburgh, our supreme court agreed with the analysis in Manchester. Handburgh, 119 Wn.2d at 290-91, 293. The court rejected the common law view that force used during a robbery must be contemporaneous with the taking, and adopted the modern transactional view of robbery. Handburgh, 119 Wn.2d at 290-91; see also Johnson, 155 Wn.2d at 611. In adopting the transactional view of robbery, the Court described a factual scenario markedly similar to the facts in this case:

> A person takes money from the cash register of a seemingly unattended convenience store, thereby committing theft. Before the thief flees, the owner comes out of the back room and confronts him. Seeing the owner, the thief points a gun at him. . . . In our opinion, . . . the theft should be considered a robbery, even if no additional property is taken; the retention of the cash, by the use or threatened use of force in the presence of the store owner, is more than theft. The robbery statute was intended to punish this very combination of crimes.

Handburgh, 119 Wn.2d at 290-91.

Hall also contends the State did not prove that he used force or fear during the attempt to steal the money. Hall argues that the jury instruction omitted a sentence used in the instruction in Handburgh and set forth in the Washington pattern jury instruction defining robbery. See Handburgh, 119 Wn.2d at 287-88. The omitted sentence states that "[s]uch taking constitutes robbery whenever it appears that,

---

[4] (Alteration in original.)
[5] (Alterations in original.)

9

although the taking was fully completed without the knowledge of the person from whom taken, such knowledge was prevented by the use of force or fear." 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 37.50, at 674 (3d ed. 2008) (WPIC).

The omitted sentence is in brackets. The WPIC states that the sentence shall be used only where it applies to the facts of the case. WPIC 37.50, at 674. Here, the bracketed language was clearly inapplicable to Hall's case. There is no dispute that Melwani knew Hall was attempting to steal money from the cash register and confronted Hall during the attempt.

Viewing the evidence in the light most favorable to the State, the State presented sufficient evidence to find Hall committed attempted robbery in the first degree in the presence of Melwani. Hall planned to steal money at Pit Stop Express convenience store by showing his gun to the clerk. Hall testified that he planned to " 'show [Melwani] the gun and he would hand the money over.' " Hall went to the Pit Stop Express armed with a snub-nosed revolver and wearing a disguise. Hall testified he knew he would need Melwani's help to get into the cash register. The cash register was locked and access to the cash register was under Melwani's control.[6] Melwani confronted Hall while he was attempting to open the register.

Sufficient evidence also supports finding that Hall used force or fear during his attempt to steal the money from the register. There is no question that Hall used force to "overcome resistance to the taking."[7] The video shows that the attempts to steal the

---

[6] See Manchester, 57 Wn. App. at 768 (defining "presence" as a taking of something within a victim's control).

[7] RCW 9A.56.190.

10

money and use of force were part of an ongoing transaction. Hall's efforts to get money out of the cash register occurred within seconds of Melwani confronting him and Hall shooting Melwani.

In his statement of additional grounds, Hall claims the court abused its discretion in denying the motion to continue he made the day before trial. Hall's argument is without merit.

In July 2011, the court permitted Hall's counsel to withdraw and allowed another lawyer at The Defender Association to represent Hall. The court's decision was expressly based on the representation that "[t]he defense is not seeking a continuance of the current trial date in order to effectuate this substitution." Substitute counsel assured the court that "his substitution would not impact the trial date, that he would not seek a continuance."

Nonetheless, in September, the attorney filed a motion to continue the trial date in order to prepare. The court granted the motion and continued the trial until September 28 but on the condition of no further continuances. The day before trial, the presiding criminal judge denied the motion to continue the trial date.

We review a trial court's decision for an abuse of discretion. State v. Nguyen, 131 Wn. App. 815, 819, 129 P.3d 821 (2006). A trial court abuses its discretion when it bases its decision on untenable grounds or reasons. Nguyen, 131 Wn. App. at 819. Here, the court granted the defense request for two continuances but denied the request that was made the day before trial. The court did not abuse its discretion by denying the motion to continue.

No. 68443-4-I/12

We reject Hall's argument that the jury instruction required the State to prove more than the express statutory elements of robbery, and conclude sufficient evidence supports the jury verdict.

Affirmed.

WE CONCUR: