IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 33251-9-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| RICHARD ALEXANDER TIGNER, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — A jury convicted Richard Tigner of second degree robbery and fourth degree assault. Mr. Tigner appeals, alleging improper jury instructions as well as several errors raised in his statement of additional grounds for relief. We affirm.

## FACTS

Mr. Tigner is serving 73 months in prison as a result of a dispute over a bicycle.

Mr. Tigner and Mark Huffman were acquaintances. One evening, Mr. Tigner asked to

borrow Mr. Huffman's bicycle. Mr. Huffman refused. The next morning, Mr. Huffman discovered his bicycle was missing. Mr. Huffman went out looking for his bicycle and eventually located both Mr. Tigner and his bicycle at a Pik-A-Pop convenience store not far from his home.

When Mr. Huffman arrived at the store, Mr. Tigner ran out into the street acting "real hyper and wanting to welcome [Mr. Huffman]." Verbatim Report of Proceedings (VRP) (Feb. 26, 2015) at 68. Mr. Huffman told Mr. Tigner he needed his bicycle back. Mr. Tigner started mumbling incomprehensibly and began punching Mr. Huffman. Mr. Huffman yelled for bystanders to call the police. He tried to get away by entering the store, but Mr. Tigner grabbed him, held him down and punched him again. At this point, the store clerk became involved wanting to know what was happening. Mr. Tigner then went into the store after the clerk. Mr. Huffman seized this opportunity to grab his bicycle and go home.

While inside the Pik-A-Pop, the clerk told Mr. Tigner he needed to calm down or leave. Mr. Tigner responded with some derogatory comments and punched the clerk in the stomach.

The police arrived as Mr. Tigner was coming out of the Pik-A-Pop. Officers arrested Mr. Tigner and noted he was "very agitated" and that "[a]t some points, he was

No. 33251-9-III
*State v. Tigner*

screaming, sweating profusely" and acting "like a crazy man would be." *Id.* at 56. One

officer noted Mr. Tigner's behavior was consistent with someone under the influence.

Mr. Tigner was charged with one count of robbery in the second degree (based on

the incident with the bicycle) and one count of assault in the fourth degree (based on the

attack of the store clerk). At the close of testimony at trial, the court denied Mr. Tigner's

request for a voluntary intoxication instruction, "since the defendant has not presented

testimony." *Id.* at 103.

The court's reasonable doubt instruction provided, in relevant part:

A reasonable doubt is one for which a reason exists and may arise from the
evidence or lack of evidence. It is such a doubt as would exist in the mind
of a reasonable person after fully, fairly, and carefully considering all of the
evidence or lack of evidence. If, from such consideration, you have an
abiding belief in the truth of the charge, you are satisfied beyond a
reasonable doubt.

Clerk's Papers (CP) at 28. There was no objection to this instruction.

A jury found Mr. Tigner guilty as charged. Mr. Tigner appeals.

## ANALYSIS

*Voluntary intoxication jury instruction*

Mr. Tigner contends the trial court erred in not providing the jury with a voluntary

intoxication instruction. This court reviews a trial court's decision to reject a jury

instruction on voluntary intoxication for abuse of discretion. *State v. Priest*, 100 Wn.

3

App. 451, 453-54, 997 P.2d 452 (2000).  RCW 9A.16.090 allows a jury to take a defendant's intoxication into consideration in determining whether a defendant acted with the required mental state.  To warrant a voluntary intoxication instruction, a defendant must show: (1) the charged offense has a particular mental state, (2) there is substantial evidence the defendant had been drinking or using drugs, and (3) there is evidence the drinking or drug use affected the defendant's ability to acquire the required mental state. *State v. Gallegos*, 65 Wn. App. 230, 238, 828 P.2d 37 (1992).

The trial court stated it would not grant an intoxication instruction because "the defendant has not presented testimony."  VRP (Feb. 26, 2015) at 103.  This reasoning was erroneous.  The defense need not proffer any evidence in order to receive an intoxication instruction.  While affirmative defense evidence is generally more persuasive, an intoxication instruction can be given based solely on evidence elicited during the State's case.  *State v. Gabryschak*, 83 Wn. App. 249, 253, 921 P.2d 549 (1996).

Although we disagree with the trial court's reasoning, we uphold the outcome. Mr. Tigner's case did not warrant an intoxication instruction because there was no "showing of drug or alcohol consumption" or "the effect of the consumption on the drinker." *State v. Walters*, 162 Wn. App. 74, 82, 255 P.3d 835 (2011).  While numerous witnesses noted Mr. Tigner's unusual behavior, there was no actual evidence of drug or

4

alcohol use. As a consequence, there was no evidence from which the jury could link Mr. Tigner's behavior with intoxication as opposed to some other cause, such as mental illness or an aggressive personality trait. Based on the limited evidence presented to the jury, the trial court's decision to exclude an intoxication instruction was correct. *State v. Mriglot*, 88 Wn.2d 573, 578, 564 P.2d 784 (1977).

*Reasonable doubt jury instruction*

Apart from his arguments regarding intoxication, Mr. Tigner argues, for the first time on appeal, that the trial court's reasonable doubt instruction was constitutionally defective. Mr. Tigner cites two flaws with the court's instruction: (1) it focused the jury on a search for "the truth of the charge," and (2) it required the jurors to articulate a reason for their doubt in order to acquit.

Generally, a party's failure to raise an issue at trial waives the issue on appeal. RAP 2.5(a). However, three exceptions permit review, including a claim of manifest error affecting a constitutional right. RAP 2.5(a)(3). To determine if that exception applies, appellate courts ask two questions: "(1) Has the party claiming error shown the error is truly of a constitutional magnitude, and if so, (2) has the party demonstrated that the error is manifest?" *State v. Kalebaugh*, 183 Wn.2d 578, 583, 355 P.3d 253 (2015).

No. 33251-9-III
*State v. Tigner*

The challenges asserted by Mr. Tigner are not novel. The trial court's reasonable

doubt instruction mirrored the applicable pattern instruction. *Compare* CP at 28 *with* 11

WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 4.01, at

85 (3d ed. 2008). The language in this instruction has been upheld consistently for

decades, including in the context of challenges analogous to Mr. Tigner's. *See State v.*

*Bennett*, 161 Wn.2d 303, 317, 165 P.3d 1241 (2007); *State v. Pirtle*, 127 Wn.2d 628, 656,

904 P.2d 245 (1995); *State v. Lizarraga*, 191 Wn. App. 530, 567, 364 P.3d 810 (2015),

*review denied*, 185 Wn.2d 1022, 369 P.3d 501 (2016); *State v. Federov*, 181 Wn. App.

187, 200, 324 P.3d 784 (2014), *review denied*, 181 Wn.2d 1009, 335 P.3d 941 (2014).

Given this legal landscape, Mr. Tigner cannot establish manifest constitutional error.

Review is unwarranted.

## STATEMENT OF ADDITIONAL GROUNDS

*Photographic evidence*

Mr. Tigner seemingly contends the trial court erred by admitting visually

emotional photographs as evidence. He does not identify or describe the photographs at

issue. Without access to more information regarding the photographs, we have no basis

for concluding either that the trial court abused its discretion by admitting the

photographs or that the admission of the photographs materially affected the verdict. This

6

claim of error must fail.

*Insufficient evidence*

Mr. Tigner also seemingly makes a sufficiency of the evidence challenge to his second degree robbery conviction. Evidence is sufficient to support a conviction if, when viewed in the light most favorable to the State, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Appellate courts defer to the trier of fact on issues of conflicting testimony, witness credibility, and persuasiveness of the evidence. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

Washington has adopted a "transactional view" of robbery. *State v. Manchester*, 57 Wn. App. 765, 770, 790 P.2d 217 (1990). As such, robbery is a continuing offense, lasting from the initial acquisition of property through retention and escape. *Id.* Force used at any stage of this continuum can satisfy the force element of the statutory offense. *State v. Robinson*, 73 Wn. App. 851, 856, 872 P.2d 43 (1994). In addition to proving force, second degree robbery also requires proof of a specific intent to steal. *State v. Sublett*, 156 Wn. App. 160, 188, 231 P.3d 231 (2010).

Trial testimony established Mr. Tigner took Mr. Huffman's bicycle after being denied permission to do so. Once confronted, Mr. Tigner used force to try to retain the

bicycle. This evidence provided the jury sufficient proof of intent to steal and use of force. We reject Mr. Tigner's challenge.

## Ineffective assistance of counsel

Finally, Mr. Tigner claims his attorney provided ineffective assistance by failing to develop an alternative defense strategy. The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 684-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To establish ineffective assistance of counsel, a defendant must prove (1) defense counsel's representation was deficient, i.e., it fell below an objective standard of reasonableness under the circumstances, and (2) the deficient representation prejudiced him, i.e., a reasonable probability exists the outcome would have been different without the deficient representation. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995).

Mr. Tigner does not identify any specific flaws with his defense attorney's performance. He does not argue his attorney failed to conduct an appropriate investigation, present mitigating evidence, or subpoena relevant witnesses. While the defense rested without calling any witnesses, such a decision is generally a "matter of legitimate trial tactics that will not support a claim for ineffective assistance of counsel."

8

No. 33251-9-III
*State v. Tigner*

*State v. Maurice*, 79 Wn. App. 544, 552, 903 P.2d 514 (1995). Because Mr. Tigner

provides us no basis for criticizing defense counsel's representation, the claim of

ineffective assistance of counsel must be rejected.

## CONCLUSION

Based on the foregoing, we affirm the judgment and sentence of the trial court.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Pennell, J.

WE CONCUR:

_____           _____
Lawrence-Berrey, A.C.J.                    Siddoway, J.

9