# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

COURT OF APPEALS DIV I
STATE OF WASHINGTON
FILED
2017 JUL 31 PM 12: 03

STATE OF WASHINGTON, )
           )    No. 75172-7-I
       Respondent, )
           )    DIVISION ONE
   v.          )
           )    UNPUBLISHED OPINION
KARLA PAOLA CHAVEZ, )
           )
       Appellant.      )    FILED: July 31, 2017

TRICKEY, A.C.J. — Karla Chavez Montoya[1] appeals her conviction for robbery in the second degree. Chavez Montoya acted as an accomplice to this crime. She argues that there was insufficient evidence that she or the principal used force during the robbery itself. Because it is reasonable to infer that the principal used force in an attempt to retain the stolen property from the fact that she immediately attacked the store employee who confronted her, we affirm.

## FACTS

At approximately 3:00 a.m., on October 16, 2017, Chavez Montoya and her friend "Smiles" arrived at a Walmart store.[2] Smiles and Chavez Montoya shopped together for about 30 minutes, both placing items in a shopping cart.

About half an hour later, Smiles left the store with the shopping cart, without paying for the items. Chavez Montoya was aware that Smiles had not paid for the items when she left.

Seconds after Smiles left the store, Ryan Meyer, a Walmart Asset

---

[1] Because different versions of Chavez Montoya's name appear in the trial court record, we adopt the version of her name used in her brief to this court. See, e.g., Br. of Appellant at 2.
[2] Clerk's Papers (CP) at 29.

Protection Associate who was on duty at the time, confronted Smiles. Meyer tried to make Smiles return to the store. Smiles responded by punching Meyer in the head and body. Shortly after Smiles started punching Meyer, Chavez Montoya joined them. Chavez Montoya also attacked Meyer, "physically . . . striking him in the head several times."[3]

Meyer retreated, allowing both Chavez Montoya and Smiles to get in their car and drive away. They did not take the shopping cart with them.

The State charged Chavez Montoya with robbery in the second degree. The court found Chavez Montoya guilty after a bench trial. It imposed a $200 criminal filing fee, $500 victim assessment fee, and $100 DNA (deoxyribonucleic acid) collection fee.

Chavez Montoya appeals.

## ANALYSIS

### Sufficiency

Chavez Montoya challenges the sufficiency of the evidence supporting her conviction for robbery in the second degree. Because a rational trier of fact could have found that Chavez Montoya or Smiles used force to retain the stolen property or overcome resistance to the taking, we disagree.

The State must prove all elements of a charged crime beyond a reasonable doubt. State v. Larson, 184 Wn.2d 843, 854, 365 P.3d 740 (2015). When a criminal defendant challenges the sufficiency of the evidence, we determine whether, viewing the evidence in the light most favorable to the State, "any rational

---

[3] CP at 30.

2

trier of fact could have found guilt beyond a reasonable doubt." State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). We accept as true all the State's evidence and any inferences that the jury could reasonably have drawn from it. Salinas, 119 Wn.2d at 201.

When the defendant is convicted after a bench trial, the appellate court reviews the trial court's findings of fact for substantial evidence and its conclusions of law de novo. State v. Homan, 181 Wn.2d 102, 105-06, 330 P.3d 182 (2014). Unchallenged findings of fact are verities on appeal. Homan, 181 Wn.2d at 106.

Here, Chavez Montoya was convicted of robbery in the second degree. A person is guilty of robbery in the second degree when he or she

> unlawfully takes personal property from the person of another or in his or her presence against his or her will by the use or threatened use of immediate force . . . . Such force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking.

RCW 9A.56.190, .210(1).

The "retention, via force against the property owner, of property initially taken peaceably or outside the presence of the property owner, is robbery." State v. Handburgh, 119 Wn.2d 284, 293, 830 P.2d 641 (1992). For example, a person is guilty of robbery when the "person shoplifts from a store, leaves the store, is confronted by a security guard, pushes the security guard, and flees." State v. McIntyre, 112 Wn. App. 478, 481, 49 P.3d 151 (2002); see also State v. Manchester, 57 Wn. App. 765, 768-69, 790 P.2d 217 (1990) (holding that defendant was guilty of robbery when he took property outside the presence of the owner but used force to retain it).

But "the force must relate to the taking or retention of the property, either as force used directly in the taking or retention or as force used to prevent or overcome resistance 'to the taking.'" State v. Johnson, 155 Wn.2d 609, 611, 121 P.3d 91 (2005). When the person uses force to escape, after abandoning the stolen property, that use of force will not support a robbery conviction. Johnson, 155 Wn.2d at 609-10.

Here, Chavez Montoya does not challenge any of the trial court's findings of fact, but argues that they do not support the legal conclusion that Smiles or Chavez Montoya used force to obtain or retain possession of the stolen property or to prevent or overcome resistance to the taking. Instead, relying primarily on video surveillance footage, Chavez Montoya argues that "at most, the evidence demonstrates force was used merely to escape" without the stolen property.[4] We disagree.

Right before Meyer confronts Smiles, she walks out of frame with the shopping cart. Meyer is rapidly pursuing her. The video surveillance footage does not capture their initial confrontation. Less than 10 seconds later, Meyer and Smiles reappear and Smiles is fighting with Meyer. Neither of them is holding the cart, but it is visible. After another five to ten seconds, Meyer and Smiles again move out of view, leaving the cart in frame. About 15 seconds later, while Meyer and Smiles are not visible, a second Walmart associate retrieves the cart. About 25 seconds later, Meyer, Smiles, and Chavez Montoya, who has joined them by this point, reappear, still fighting. Smiles and Chavez Montoya flee. The whole

---

[4] Br. of Appellant at 8.

incident lasts just over a minute.

It is clear from the footage that, eventually, Smiles and Chavez Montoya abandoned the cart and used force to escape from Meyer. But, viewing all evidence in the light most favorable to the State, a rational trier of fact could infer that Smiles used force against Meyer *before* she abandoned the cart. Chavez Montoya, as Smiles' accomplice, is responsible for Smiles' use of force.[5]

Thus, there is sufficient evidence to support the trial court's conclusion that Chavez Montoya's theft involved the use of force to retain stolen property or overcome resistance to the taking and, therefore, constituted robbery.

### Criminal Filing Fee

For the first time on appeal, Chavez Montoya argues that the trial court erred by imposing the $200 criminal filing fee under RCW 36.18.020(2)(h) because it is discretionary, not mandatory, and the court intended to impose only the mandatory legal financial obligation (LFO). We generally do not review issues raised for the first time on appeal unless they are manifest errors affecting constitutional rights. RAP 2.5(a)(3); State v. O'Hara, 167 Wn.2d 91, 99, 217 P.3d 756 (2009). Here, we decline to consider Chavez Montoya's argument because she has failed to show that the error is manifest or of constitutional magnitude.

Regardless, as Division Two of this court recently determined, the language of the statute indicates that the filing fee is mandatory. State v. Gonzales, 198 Wn. App. 151, 153-55, 392 P.3d 1158 (2017). Whether the criminal filing fee is mandatory or discretionary is a question of statutory interpretation we review de

---

[5] The trial court concluded that Chavez Montoya was an accomplice to Smiles' theft, which Chavez Montoya does not dispute.

novo. Gonzales, 198 Wn. App. at 153. When possible, courts give effect to the plain meaning of a statute, as an expression of legislative intent. Jametsky v. Olsen, 179 Wn.2d 756, 762, 317 P.3d 1003 (2014). The court derives the plain meaning "from the context of the entire act as well as any 'related statutes which disclose legislative intent about the provision in question.'" Jametsky, 179 Wn.2d at 762 (quoting Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wn.2d 1, 11, 43 P.3d 4 (2002)).

Here, the statute provides that, when an adult defendant has been convicted, the clerk shall collect a criminal filing fee:

> (2) Clerks of superior courts *shall* collect the following fees for their official services
>
> . . . .
>
> (h) Upon conviction or plea of guilty, upon failure to prosecute an appeal from a court of limited jurisdiction as provided by law, or upon affirmance of a conviction by a court of limited jurisdiction, an adult defendant in a criminal case *shall be liable* for a fee of two hundred dollars.

RCW 36.18.020(2)(h) (emphasis added).

Chavez Montoya argues that the statue is ambiguous because "liable" can refer to a situation that *might* give rise to legal liability. This is the same argument the court rejected in Gonzales. 198 Wn. App. at 154-55.

We agree with the court's conclusion in Gonzales that accepting that argument would require us to ignore that the words "shall be" immediately precede the word "liable.'" 198 Wn. App. at 155. The word "shall" in a statute presumptively creates a mandatory requirement "'unless a contrary legislative intent is apparent.'" State v. Krall, 125 Wn.2d 146, 148, 881 P.2d 1040 (1994) (quoting Erection Co. v.

Dep't of Labor & Indus., 121 Wn.2d 513, 518, 852 P.2d 288 (1993)). No contrary intent is apparent in this statute; thus, the word "shall" creates a mandatory requirement. The trial court did not err by imposing the criminal filing fee as a mandatory LFO.

### Appellate Costs

Chavez Montoya requests that, if the State substantially prevails, this court not impose appellate costs. The State has indicated that it will not seek appellate costs in light of Chavez Montoya's financial circumstances. We exercise our discretion to deny costs.

Affirmed.

_Trickey, ACJ_

WE CONCUR:

_Schindler, J_                    _Cox, J._